EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Empress Hotel, Inc.; Carl Palermo; Linda Palermo; Anthony Palermo; Loraine Palermo de Davis<br>　　Recurridos<br>　　　v.<br><br>Benjamín Acosta Robles, por sí y en representación de la Sociedad Legal de Gananciales constituida con Josefina González; Benjamín Acosta, Inc.<br>　　Peticionarios | Certiorari<br><br>2000 TSPR 18 |

Número del Caso:　CC-1999-0811

Fecha: 08/03/2000

Tribunal de Circuito de Apelaciones: Circuito Regional VII

Juez Ponente:　Hon. Miranda de Hostos

Abogados de la Parte Peticionaria:
　　　　　　　　Bufete Juan A. Ramos Díaz
　　　　　　　　Lcda. Sylvia M. González González

Abogados del Empress Hotel:
　　　　　　　　Bufete José Nicolás Medina Fuentes
　　　　　　　　Lcdo. José Nicolás Medina Fuentes
　　　　　　　　Lcdo. Gaspar Martínez Mangual

Abogados de　Benjamín Acosta Robles, sociedad de gananciales y Benjamín Acosta, Inc.:
　　　　　　　　Carlos A. Ramos Law Offices
　　　　　　　　Lcdo. Carlos A. Ramos

Abogados de Benjamín Acosta, Jr.:
　　　　　　　　Bufete Benjamín Acosta, Jr.
　　　　　　　　Lcdo. Roberto Márquez Sánchez

Abogados de Benjamín Acosta Robles y Benjamín Acosta, Inc. en el exceso de la póliza:
　　　　　　　　Bufete Juan A. Ramos Díaz
　　　　　　　　Lcdo. Juan A. Ramos Díaz

Abogados de Sr. Agustín Cofán y WILDO Construction:
　　　　　　　　Lcdo. Jorge Lora Longoria

Abogados de Ing. Emiliano H. Ruiz:
　　　　　　　　Law Offices José A. Masini Soler
　　　　　　　　Lcdo. José A. Masini Soler

Abogados de Sr. Manuel del Llano:
　　　　　　　　Lcdo. Nelson Rosario Rodríguez
Materia:

　　　Este documento constituye un documento oficial del Tribunal
　　　Supremo que está sujeto a los cambios y correciones del
　　　proceso de compilación y publicación oficial de las
　　　decisiones del Tribunal. Su distribución electrónica se hace
　　　como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Empress Hotel, Inc.; Carl Palermo Linda Palermo; Anthony Palermo; Loraine Palermo de Davis Demandantes-Recurridos | * * * * * | CC-1999-811 |
| vs. | * * | Certiorari |
| Benjamín Acosta Robles, Por Sí y en Representación de la Soc. Legal de Gananciales Constituida con Josefina González; Benj. Acosta, Inc. Demandados-Peticionarios | * * * * * | |
| Bay View Claims Management, Inc.; Et Als. Demandados | * * * | |
| Emiliano H. Ruiz Tercero Demandante | * * * | |
| vs. | * * | |
| Manuel Del Llano Morales; Por Sí y en Representación de la Sociedad Legal de Gananciales Tercero Demandado | * * * * | |

* * * * * * * * * * * * * * * * * * * * **

RESOLUCION

San Juan, Puerto Rico, a 8 de febrero de 2000.

A la solicitud de certiorari presentada en este caso, no ha lugar por falta de jurisdicción por prematuro.

No procede la presentación de un recurso ante nos hasta que no se archive en autos la notificación de la Resolución resolviendo la moción de reconsideración ante el foro apelativo. Véase, R. 20(a)8 del Reglamento del Tribunal Supremo de Puerto Rico.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió un voto concurrente. La Juez Asociada señora Naveira de Rodón emitió un voto particular disidente.

**Isabel Llompart Zeno**
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Empress Hotel, Inc.; Carl Palermo Linda A. Palermo; Anthony Palermo; Loraine Palermo de Davis Demandantes-Recurridos | * * * * * | CC-1999-811 |
| vs. | * * * | |
| Benjamín Acosta Robles, Por Sí y en Representación de la Soc. Legal de Gananciales Constituida con Josefina González; Et Als. Demandados | * * * * * | Certiorari |
| Emiliano H. Ruiz, Por Sí y en Representación de su Sociedad de Gananciales Codemandado-Tercero Demandante- Peticionario | * * * * * * | |
| vs. | * * | |
| Manuel E. Del Llano Morales; Por Sí y en Representación de su Sociedad Legal de Bienes Gananciales Tercero Demandado-Recurrido | * * * * | |

* * * * * * * * * * * * * * * * * * * * * * **

RESOLUCION

San Juan, Puerto Rico, a 8 de febrero de 2000.

En vista de nuestro dictamen en el caso CC-1999-940, a la solicitud de certiorari presentada en este caso, no ha lugar por académica.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.

**Isabel Llompart Zeno**
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Empress Hotel, Inc.; Carl Palermo, et al.<br> Demandantes-Recurridos<br><br>v.<br><br>Benjamín Acosta Robles, et al.<br> Demandados<br><br>Emiliano H. Ruiz, por sí y en representación de su Sociedad de Gananciales<br>  Codemandado-Tercero<br>  Demandante-Peticionario<br><br>v.<br><br>Manuel E. del Llano Morales, por sí y en Representación de su Sociedad Legal de Bienes Gananciales<br>  Tercero Demandado-Recurrido | CC-1999-811 |

Voto Concurrente del Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 8 de febrero de 2000

"La jurisdicción, como dice el ilustrado comentarista Manresa y Navarro, emana siempre de la ley, directa e inmediatamente; **nadie puede ejercerla sin que la ley le haya concedido este poder**; sólo tienen jurisdicción, sólo pueden administrar justicia las personas a quienes les ha sido conferido este poder con arreglo a la ley". Bayron, et al. v. García, et al., 17 D.P.R. 538 (1911).

I

Se acude ante este Tribunal de una Sentencia del Tribunal de Circuito de Apelaciones del 28 de septiembre de 1999, archivada en autos su copia el 1ro de octubre de 1999. La misma revocó dos dictámenes del Tribunal de Primera Instancia, Sala Superior de Carolina

(Hon. Sonsire Ramos Soler). El primero, una sentencia sumaria parcial, que desestimó las reclamaciones presentadas por los demandantes, Empress Hotel, Carl Palermo, Linda A. Palermo, Anthony Palermo y Lorraine Palermo de Davis, contra los demandados Emiliano H. Ruiz y la sociedad de gananciales compuesta por éste y su esposa; y el segundo, una Sentencia final desestimando las reclamaciones contra los demandados Benjamín Acosta Robles, la sociedad de bienes gananciales compuesta por éste y su esposa y Benjamín Acosta Inc.

Contra cada uno de estos dictámenes, los demandantes apelaron al Tribunal de Circuito **separadamente.** El tribunal intermedio los consolidó y dictó sentencia revocando en ambos recursos y devolviéndolos a Instancia para la celebración de una vista evidenciaria plenaria. **En tiempo, 18 de octubre de 1999, el demandado Acosta Robles  presentó una moción de reconsideración a la Sentencia del Tribunal de Circuito de Apelaciones.** Ese foro la denegó finalmente el 22 de octubre, notificada el 8 de noviembre.

**Entretanto,** el demandado Benjamín Acosta Robles y Emiliano H. Ruiz presentaron sendos recursos de certiorari a este Tribunal, el 29 de octubre de 1999 (CC-1999-811) y el 1ro de noviembre (CC-1999-817), respectivamente. **Esto es prematuramente, el primero, nueve (9) y el segundo siete (7) días antes del Tribunal de Circuito haber resuelto y archivado en autos copia de la notificación de la negativa a la reconsideración.**

II

**Coincidimos con  el  criterio jurídico mayoritario que provee no ha lugar al recurso CC-99-811 por falta de jurisdicción, al haberse presentado prematuramente.**

La doctrina procesal sobre la presentación oportuna de recursos ante el Tribunal Supremo -basada en el texto prístino de la Regla 53.1 de Procedimiento Civil-, es clara y ha sido reiterada por nosotros en más de una ocasión: ante una reconsideración oportunamente presentada en el Tribunal de Circuito, hasta que éste no actúa, **no existe jurisdicción**

**ni autoridad constitucional ni legal** de este Tribunal para entender en torno a los méritos del recurso.[1] <u>Hernández Apellániz</u> v. <u>Marxuach Construction Co.</u>, res. en 3 de febrero de 1997, 142 D.P.R. _____ (1997); <u>Pérez Marrero</u> v. <u>C.R. Jiménez, Inc.</u>, res. en 20 de abril de 1999, 99 TSPR 59. **La falta de jurisdicción es una deficiencia insubsanable y no puede remediarse más que por la presentación de un nuevo recurso, esa vez oportuno. Este Tribunal recientemente reiteró la doctrina y el procedimiento a seguirse en estos casos mediante**

---

[1] En lo pertinente reza:

(g) Interrupción del término para apelar.--El transcurso del término para apelar se interrumpirá por la oportuna presentación de una moción formulada de acuerdo con cualquiera de las reglas que a continuación se enumeran, **y el referido término comenzará a contarse de nuevo desde que se archive en autos copia de la notificación de cualquiera de las siguientes órdenes en relación con dichas mociones:**

(1) En las apelaciones al Tribunal de Circuito de Apelaciones provenientes del Tribunal de Primera Instancia, declarando con lugar o denegando una moción bajo la Regla 43.3 para enmendar o hacer determinaciones iniciales o adicionales de hechos, fuere o no necesaria una modificación de la sentencia si se declarare con lugar la moción;

(2) en las apelaciones al Tribunal de Circuito de Apelaciones provenientes del Tribunal de Primera Instancia, resolviendo definitivamente una moción de reconsideración sujeto a lo dispuesto en la Regla 47;

(3) en las apelaciones al Tribunal de Circuito de Apelaciones provenientes del Tribunal de Primera Instancia, denegando una moción de nuevo juicio bajo la Regla 48;

(4) **en las apelaciones al Tribunal Supremo provenientes del Tribunal de Circuito de Apelaciones, resolviendo definitivamente una moción de reconsideración presentada de conformidad con lo dispuesto en la Regla 47.**

(h) Interrupción del término para presentar una solicitud de certiorari ante el Tribunal Supremo.--**El transcurso del término para presentar ante el Tribunal Supremo una solicitud de certiorari de una sentencia o resolución final del Tribunal de Circuito de Apelaciones se interrumpirá por la oportuna presentación de una moción de reconsideración de conformidad con lo dispuesto en la Regla 47. El referido término comenzará a contarse de nuevo a partir del archivo en autos de copia de la notificación de la resolución o sentencia del Tribunal de Circuito de Apelaciones resolviendo definitivamente la moción de reconsideración.** (Énfasis suplido).

**Resolución publicada:**

> "Como ocurre con otros casos de jurisdicción prematura, este dictamen en nada impide a las partes acudir nuevamente, de manera diligente, ante este Foro dentro del término jurisdiccional correspondiente.
>
> A solicitud de parte, para facilitar el trámite y en aras de la economía procesal, la Secretaría del Tribunal queda autorizada a desglosar los documentos de este recurso, salvo los originales. Una vez desglosadas las copias del recurso, la parte podrá proceder a sustituirles la carátula, para que refleje el nuevo número de presentación, y última página, con la firma y nueva fecha de presentación. Además, tendría que anejarles al apéndice copia de la resolución denegando la reconsideración y del volante de notificación antes de presentar nuevamente el recurso." Osvaldo Ruiz Cáceres v. Puerto Rico Telephone Company, res. en 2 de febrero de 2000.

**Sobre el concepto medular de jurisdicción se sostiene toda la vitalidad y autoridad de los tribunales en nuestro sistema de gobierno. Los tribunales, que ostentamos el monopolio y poder para interpretar y hacer valer las leyes no podemos abrogarnos facultades ilimitadas, arbitrarias.** De ahí surge, que la jurisdicción es elemento fundamental –que es decir fundamento qua razón legitimante–, que autoriza al Estado, a través de sus tribunales, a dictar sentencias y exigir su cumplimiento. Cuando un Tribunal dicta una sentencia sin tener jurisdicción sobre las partes o la materia, su decreto es uno jurídicamente inexistente. Que un Tribunal acoja un recurso a sabiendas de que carece de jurisdicción para entender en el mismo, es una actuación ilegítima. "[L]a jurisdicción es la potestad de que se hallan revestidos los Jueces para administrar justicia y ese poder emana directa e inmediatamente de la ley." Ex parte Bou, 7 D.P.R. 132 (1904). **Donde la ley prohibe expresa y claramente que un Tribunal asuma jurisdicción sobre un recurso, no cabe una interpretación contraria.**

"Jurisdicción ha sido definida como la autoridad en virtud de la cual, los funcionarios judiciales conocen de las causas y las deciden; o la facultad de oír y resolver una causa; o el derecho de un Juez de pronunciar sentencia conforme a la Ley, en una causa o cuestión pendiente ante él **cuya autoridad, facultad o derecho han sido adquiridos en virtud de un procedimiento legal en debida forma.** Dicha jurisdicción

incluye la facultad de compeler la ejecución de lo decretado, y puede decirse que es el derecho de adjudicar con respecto al asunto de que se trata en un caso dado. Para constituir una jurisdicción, hay tres cosas esenciales: primero, el Tribunal debe conocer de la clase de causas a que pertenece la que debe fallarse. Segundo, las partes correspondientes deben estar presentes en el Tribunal, ya sea personalmente o ya sea representadas por un Abogado; y tercero, el punto decidido debe, en sustancia y efecto, hallarse comprendido dentro de la cuestión de hecho o de derecho de que se trata." American Railroad Co. of P. R. v. Hernández, 8 D.P.R. 516, 522 (1905). (Énfasis suplido).


III

En la controversia ante nos, falta el primero de los criterios esenciales para asumir jurisdicción sobre un recurso: este Tribunal no puede "conocer de la clase de causas a que pertenece la que debe fallarse", viz, **aquellos recursos contra sentencias o resoluciones del Tribunal de Circuito de Apelaciones en las que se ha presentado y está pendiente una moción de reconsideración.**

**La falta de jurisdicción de un tribunal para entender en un recurso es un defecto procesal insubsanable**; mucho menos, puede corregirse con una **"moción informativa"**. Como hemos sostenido anteriormente: "[l]a falta de jurisdicción por prematuridad no acontece cuando se dicta la Resolución desestimando el recurso; el momento decisorio y crucial es la fecha de su presentación, no el de esa Resolución. Carente de eficacia jurídica interruptora; si acaso, la única otra decisión sería ordenar su desglose y devolución al presentante." Pueblo v. Santana Rodríguez, res. en 25 de mayo de 1999, 99 TSPR 81. Una **"moción informativa"** no puede, en la más estricta lógica jurídica, referirse a un recurso presentado prematuramente porque ese recurso es jurídicamente inexistente. Dar mérito a dicha moción sería un acto ultra vires de este Tribunal, pues

significaría entrar a considerar un escrito en el que nunca pudo conocer. American Railroad Co. of P. R. v. Hernández, supra.

Lo que es más, la consideración por este Tribunal de un recurso de apelación o certiorari cuando se ha interpuesto y pende ante el Tribunal de Circuito de Apelaciones una moción de reconsideración, implicaría una falta de deferencia a ese foro intermedio, al privarlo de la oportunidad de entender en la misma, socavaría la autoridad de ese tribunal para emitir dictámenes y menoscabaría toda la estructura apelativa establecida en el ordenamiento. En el entretiempo, la presentación de recursos faltos de jurisdicción por prematuros, convertiría a "las Secretarías u oficinas de los jueces en una extensión más de archivos ("record room") de los abogados con el propósito de conservarles los originales y copias de los recursos temporeramente inoportunos, que no debieron ni podían ser válidamente presentados por carecerse de jurisdicción." Pueblo v. Santana Rodríguez, supra, (nota núm. 1).

IV

Demás está decir, que la diligencia de un abogado incluye el conocimiento de las leyes y reglamentos y de su interpretación por este Tribunal. Así lo consagra el segundo de los Cánones de Ética que rigen la profesión.[2] Este Tribunal ha establecido más allá de toda duda que "[e]s principio universalmente reconocido que la ignorancia de las leyes no excusa de su incumplimiento. Lo hallamos recogido en esos precisos términos en el Art. 2 del Código Civil, 31 L.P.R.A. sec. 2. Esto no quiere decir que el abogado tiene que conocer todas las leyes. Ello sería humanamente imposible. Pero su incumplimiento de las leyes no

---

[2] "A fin de viabilizar el objetivo de representación legal adecuada para toda persona, el abogado también debe realizar esfuerzos para lograr y mantener un alto grado de excelencia y competencia en su profesión a través del estudio y la participación en programas educativos de mejoramiento profesional: ayudando a los tribunales, juntas y demás autoridades en la promulgación de normas y requisitos adecuados que orienten los programas educativos de las escuelas de derecho y el proceso de admisión al ejercicio de la profesión; y sirviendo en comités, seminarios y organismos con funciones relacionadas con la divulgación, mejoramiento y aplicación de los cánones de responsabilidad profesional." (Énfasis nuestro) 4 L.P.R.A. Ap. IX, Canon 2.

puede escudarse y mucho menos justificarse en su ignorancia de ellas. Esta norma es de particular importancia y exigencia cuando se trata, como en este caso, de un término jurisdiccional, cuyo incumplimiento puede implicar la derrota de un derecho." Pueblo v. Miranda Colón, 115 D.P.R. 511, 512 (1984); In Re Díaz Alonso, Jr., 115 D.P.R. 755 (1984).

Distinto, a otros respetables criterios, el celo que provoca la presentación temprana de recursos es **falta de diligencia**: abandono en el estudio y conocimiento del derecho, negligencia en su correcta interpretación e inobservancia en su aplicación oportuna. **En su sustrato, no es diligencia la presentación prematura de un recurso ante este tribunal, contrario a las leyes y reglamentos que regulan el proceso de apelación y certiorari**. "No se trata aquí de un error de juicio o de interpretación del derecho. Estamos ante el desconocimiento e incumplimiento de las reglas de este Tribunal que todo abogado que postula ante nos debe conocer." In re Vélez Valentín, 124 D.P.R. 403, 409–410 (1989).

No procede pues, una discusión sobre si la novedad o ambigüedad de una regla podría atenuar la culpa del abogado que la desconoce, pues la normativa impuesta por Regla 53.1 de las de Procedimiento Civil no es ambigua ni nueva. Nace de la Ley Núm. 249 del 25 de diciembre de 1995, que enmendó, inter alia, las Reglas 47 y 53.1 de las de Procedimiento Civil para atemperarlas a la Ley de la Judicatura de 1994[3]. **Lleva, por tanto, más de cuatro (4) años en efecto**. Ha sido interpretada por este Tribunal reiteradamente en Hernández Apellániz v. Marxuach Construction Co., supra, hace dos años, y más recientemente en Pérez Marrero v. C.R. Jiménez, Inc., supra. Figura además como fundamento en varias resoluciones proveyendo no ha lugar a recursos presentados a destiempo. Su equivalente conceptual en el derecho procesal penal –la Regla 194 de las de Procedimiento Criminal–, también ha sido de igual forma interpretada en Pueblo v. Santana Rodríguez, supra.

---

[3] Ley Núm. 1 del 28 de julio de 1994, 4 L.P.R.A. secs. 22, et seq.

Prueba de que la "regla sobre la oportuna presentación de recursos", ha calado hondo en la profesión legal es la ínfima cantidad de apelaciones y <u>certioraris</u> que este Tribunal ha tenido que desestimar por prematuridad en los últimos tres años y medio.[4] Durante los años fiscales de 1996-1997, 1997-1998 y 1999-2000[5], se presentaron dos mil seiscientos cincuenta y cuatro (2,654) recursos ante el Tribunal Supremo. De éstos, sólo cuarenta y seis (46) fueron declarados sin lugar por prematuridad, lo que representa el uno punto siete por ciento (1.7%) de todos los recursos traídos a nuestra consideración. Compárese esta cifra con los doscientos cuarenta y cuatro (244) casos en los que se ha dado no ha lugar por craso incumplimiento del Reglamento y los doscientos sesenta y seis (266) por falta de jurisdicción. Al menos en cuanto a la presentación oportuna de recursos, la inmensa mayoría de los letrados que postulan ante esta curia conocen y se han atenido a la norma correcta.

No cabe tampoco alegar confusión entre la normativa sobre apelaciones al Tribunal de Circuito y a este Tribunal. En efecto, los plazos son distintos. Una moción de reconsideración presentada ante el Tribunal de Primera Instancia se presume rechazada de plano si no la acoge en diez (10) días. De ser rechazada de plano, no se considera interrumpido el término jurisdiccional para acudir al Tribunal de Circuito de Apelaciones. Sin embargo, un juez de instancia no está impedido en actuar sobre la moción de reconsideración, acogiéndola, modificándola o denegándola, aún después de esos diez (10) días. Podría suscitarse el caso de un abogado que recurra ante el Tribunal de Circuito de Apelaciones después de esos diez días, pero antes de que el juez de instancia emita un dictamen sobre la moción de reconsideración.

---

[4] Ya antes habíamos ofrecido estadísticas similares sobre la desestimación de casos por prematuros. Ver <u>Pérez Marrero</u> v. <u>C. R. Jiménez</u>, <u>supra</u>, a la pág. 928. Entonces establecimos que entre el 1ro de mayo de 1996 y el 28 de febrero de 1999 sólo el 1.4% de los casos presentados ante este foro habían sido desestimados por prematuridad. Ese número se ha mantenido constante.

[5] Hasta el 31 de diciembre de 1999.

La presunción de rechazo de plano protege entonces la actuación del abogado. **Este no es el caso de los recursos apelados o recurridos en certiorari del Tribunal de Circuito de Apelaciones al Tribunal Supremo.** La regla así lo enuncia y en este Tribunal Supremo así lo hemos reiterado.

Obviar una norma judicial tan talante como la falta de jurisdicción por prematuridad, sólo por consideraciones burocráticas provocadas por abogados inoportunos o faltos de diligencia, propiciaría una norma pobre apelativa.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Empress Hotel, Inc.; Carl Palermo,
et als.

     Demandantes Recurridos

          v.

Benjamín Acosta Robles, et als.

     Demandados

Emiliano H. Ruiz, por sí y en
representación de su Sociedad
de Gananciales

     Codemandado Tercero Demandante
     Peticionario

          v.

Manuel E. del Llano Morales, por
sí y en Representación de su Sociedad
Legal de Bienes Gananciales

     Tercero Demandado Recurrido

CC-1999-811

Voto Particular Disidente de la Juez Asociada señora Naveira de Rodón.


San Juan, Puerto Rico, a 8 de febrero de 2000


En enero de 1997, a menos de un año de haberse aprobado la última serie de leyes relacionadas con la reforma judicial, advertimos que la misma había creado "lo que podríamos llamar un campo minado para los abogados." Indicamos que, por la prolífica creación de recursos y el énfasis que se hacía en los detalles, la litigación, especialmente en el ámbito apelativo, se estaba convirtiendo en una cada vez más compleja. Soc. de Gananciales v. García Robles, Op. de 23 de enero de 1997, 142 D.P.R. _____ (1997), 97 JTS 8.

Hoy, después de casi tres (3) años, nuestras aseveraciones han sido corroboradas. La situación, si algo, ha empeorado. Las rígidas interpretaciones con relación a la implantación tanto de las leyes procesales como de los Reglamentos del Tribunal Supremo y del Tribunal

de Circuito de Apelaciones (en adelante Tribunal de Circuito), especialmente en cuanto a lo que se concibe como requisitos jurisdiccionales, han contribuido a acrecentar la complejidad procesal de los casos y hacer aún más azaroso el trayecto apelativo.[6] Esto, combinado con la crasa ignorancia de la práctica apelativa de muchos abogados o el simple error humano, ha sido motivo para la desestimación innecesaria de un gran número de recursos, muchos de ellos con planteamientos meritorios. Las trágicas consecuencias de esta situación la están sufriendo las partes.

Tal parece como si nos hubiésemos olvidado del principio cardinal y pragmático de hermenéutica que rige la interpretación de las reglas procesales: asegurar que las controversias se resuelvan de forma justa, rápida y económica. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Es decir, "tratar de obtenerse el mayor resultado con el mínimo de actividad procesal." Hernández Colón, Práctica Jurídica de Puerto Rico – Derecho Procesal, Cap. 3, Sec. 312, pág. 25, Michie of P.R., Inc., (1997). La consecución de estos objetivos requiere que el ordenamiento procesal se interprete liberalmente de modo que permita a las personas el mayor acceso posible a los tribunales, para que las controversias puedan ser resueltas en los méritos. Reiteradamente hemos expresado que somos partícipes de la política judicial de que los casos se ventilen en los méritos. Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, 673 (1989); Garriga Gordils v. Maldonado Colón, 109 D.P.R. 817, 822-823 (1980); Arce v. Club Gallístico de San Juan, 105 D.P.R. 305 (1976); Acevedo v. Compañía Telefónica de P.R., 102 D.P.R. 787, 791 (1974); Ramírez de Arellano v. Srio. de Hacienda, 85 D.P.R. 823, 829 (1962). La flexibilidad en la interpretación de las normas procesales cobra especial relevancia cuando se trata de una determinación de jurisdicción, pues son éstas las que abren o cierran las puertas de entrada a los tribunales apelativos. En ocasiones, en

---

[6] Tal parece como si estuviéramos regresando a la rigidez técnica que imperaba bajo el sistema de alegaciones del derecho común ("common law pleading"). Éste ha sido rechazado por la mayoría de los

nuestro afán de hacer valer las reglas, las aplicamos literalmente y perdemos de vista que las normas procesales no tienen vida propia. Éstas sólo existen para hacer viable la determinación de los derechos sustantivos de las partes y la resolución de forma pacífica de las controversias. Dávila v. Hosp. San Miguel, Inc., 117 D.P.R. 807, 816 (1986).

El resultado al cual ha llegado este Tribunal en el caso que nos ocupa refleja una realidad alarmante, altamente preocupante, que milita en contra de la naturaleza y propósitos mismos de la reforma judicial. Vemos como la ignorancia de los procedimientos apelativos de algunos miembros de la clase togada o el simple error humano, combinados éstos con la insistencia de conservar normas procesales inútiles y hacer interpretaciones rígidas han ido socavando la efectividad de la Rama Judicial. Ello, con la consecuente desmoralización y pérdida de confianza de las personas en la efectividad de los tribunales para impartir justicia. Debemos tener presente que el sistema judicial es de suma importancia para mantener la paz social, pues es el encargado de resolver de forma pacífica los conflictos que surgen a diario en toda sociedad.

Estas razones nos han motivado a expresarnos y abogar nuevamente por un cambio, tanto en la reglamentación de los procesos apelativos como en la interpretación judicial de las normas procesales aplicables a éstos.[7]

En el caso de autos, los hechos procesales pertinentes, aunque relativamente sencillos, resultan algo complejos en sus consecuencias. Veamos.


I

---

sistemas judiciales progresistas modernos.

[7] La experiencia que hemos tenido en los últimos cinco (5) años en que ha estado en vigor la Reforma Judicial del 1994, nos ha motivado a revaluar algunas de nuestras posiciones respecto a la aplicación e interpretación de las normas procesales.

Estamos ante un caso en el cual se acumularon en la demanda varios demandantes, demandados y reclamaciones. La sentencia del Tribunal de Circuito de la cual se solicita revisión fue dictada el 28 de septiembre de 1999 y notificada el 1 de octubre. En ésta fueron revocados dos dictámenes emitidos en el mismo caso, Civil Núm. FAC 93-0466 por el Tribunal de Primera Instancia, Sala Superior de Carolina. El primero, titulado Resolución, se dictó el 30 de marzo de 1999.[8] Se desestimaron mediante éste, de manera sumaria, las reclamaciones presentadas por los demandantes, Empress Hotel, Carl Palermo, Linda A. Palermo, Anthony Palermo y Lorraine Palermo de Davis, (en adelante Empress), contra los codemandados Emiliano H. Ruiz y la sociedad de gananciales compuesta por éste y su esposa (en adelante Emiliano H. Ruiz). El segundo dictamen, titulado Sentencia, se emitió el 31 de marzo, o sea, un día después. Éste desestimó, también sumariamente, las reclamaciones contra los codemandados Benjamín Acosta Robles, la Sociedad de Bienes Gananciales compuesta por éste y su esposa y contra Benj. Acosta Inc. (en adelante Benjamín Acosta Robles). Ambos dictámenes fueron notificados el 6 de abril.

El 28 de abril, mediante el recurso apelativo KLAN9900599, la parte demandante, Empress, solicitó al Tribunal de Circuito la revisión de la Resolución dictada por el foro de instancia el 30 de marzo de 1999 en la cual se desestimaron las reclamaciones en contra del codemandado Emiliano H. Ruiz. Ese mismo día también presentó el recurso apelativo, KLAN9900428, para revisar la sentencia sumaria dictada el 31 de marzo en la cual se desestimaron las acciones contra

---

[8] Aunque el foro de instancia tituló dicho dictamen Resolución, de su contenido se desprende que se trata de una sentencia sumaria parcial que desestimó las reclamaciones contra los codemandados Emiliano H. Ruiz y la sociedad de gananciales compuesta por éste y su esposa. Cabe señalar que, a pesar de ser ésta una sentencia sumaria parcial, el foro de instancia no concluyó expresamente, según lo requiere la Regla 43.5 de Procedimiento Civil, supra, que no existía razón para posponer dictar sentencia. Torres Capeles v. Rivera Alejandro, Op. 30 de mayo de 1997, 143 D.P.R. ___ (1997), 97 JTS 77. En consecuencia, la sentencia no advino final.

Benjamín Acosta Robles. Como podrá observarse, Empress utilizó dos recursos apelativos para revisar la misma sentencia.[9]

Así las cosas, el 7 de mayo de 1999, el foro de instancia continuó entendiendo en el caso y emitió otra sentencia sumaria parcial, esta vez desestimando las reclamaciones contra Benjamín Acosta González y su sociedad de bienes gananciales (en adelante Benjamín Acosta, Jr.). En dicha sentencia el tribunal especificó que "[t]oda vez que la Sentencia Sumaria dictada el 31 de marzo de 1999 y la Resolución dictada el 30 de marzo de 1999 este tribunal desestimó la presente acción en cuanto a Benjamín Acosta, Inc. así como también en cuanto al Ingeniero Emiliano Ruiz, y no habiendo alegación ni prueba alguna de actos independientes del codemandado Benjamín Acosta, Jr. procede la desestimación del caso en su contra, según solicitado en la Moción Solicitando se Dicte Sentencia Sumaria radicada el 10 de junio de 1998." A pesar que después de esta determinación en instancia no quedaba nada por resolver en el caso, en la sentencia se hizo constar que no existía razón para posponer el dictar sentencia contra Benjamín Acosta, Jr. Esta sentencia fue notificada el 12 de mayo de 1999. De ésta no se recurrió en alzada.[10] En vista de que Empress no recurrió de ninguna de las sentencias "desestimatorias" dictadas a favor del codemandado Benjamín Acosta, Jr., entendemos que éste ya no era parte en el pleito y, por ende, en nada lo afectaba la sentencia revocatoria emitida por el Tribunal de Circuito el 28 de septiembre de 1999. Así pues, siendo éste ya parte en el caso, no tenía legitimación activa para presentar el escrito de apelación, AC-1999-69, cuestionando la antes mencionada sentencia del Tribunal de Circuito. Este recurso fue presentado ante

---

[9] Aunque los dos (2) recursos presentados por Empress se referían a partes y reclamaciones distintas, los errores planteados su discusión eran idénticos en ambos.

[10] Cabe señalar que en cuanto a las reclamaciones contra el codemandado Benjamín Acosta, Jr. el foro de instancia actuó con bastante confusión. El 1ro. de agosto de 1997, dictó sentencia sumaria parcial desestimando estas reclamaciones. Esta sentencia fue notificada el 6 de agosto de ese mismo año. La misma, al cumplir con los requisitos de la Regla 43.5 de Procedimiento Civil, supra, y al no ser apelada, advino a ser final y firme. No obstante, el tribunal de instancia, mediante resolución emitida apenas dos meses más tarde, el 20 de octubre de 1997, denegó la misma moción de sentencia sumaria que ya había concedido. Esta resolución que fue notificada el 12 de noviembre de ese mismo año tampoco fue revisada.

nos el 8 de diciembre de 1999. Luego de acogerlo como una petición de certiorari por ser el recurso apropiado, la denegamos el 28 de enero de 2000.

En cuanto a los recursos presentados por Empress ante el Tribunal de Circuito, por emanar éstos de la misma situación de hechos y surgir del mismo caso y sentencia, el foro apelativo los consolidó. El 28 de septiembre dictó una sentencia mediante la cual revocó ambos dictámenes y devolvió el caso al tribunal de instancia para la celebración de una vista en la que se pudieran dilucidar las múltiples controversias de hecho que entendía subsistían en el caso.[11] Esta sentencia fue notificada el 1 de octubre. Oportunamente, el 18 de octubre, Benjamin Acosta Robles presentó ante el Tribunal de Circuito una moción de reconsideración para que éste revaluara su determinación de revocar la sentencia del foro de instancia de 31 de marzo. Ésta desestimaba las reclamaciones en su contra y fue objeto de revisión mediante el recurso KLAN 9900428. El codemandado Emiliano H. Ruiz, en cuanto al recurso KLAN 9900599, optó por no solicitar reconsideración.[12]

El 29 de octubre, veintinueve (29) días después de haberse notificado la sentencia emitida por el Tribunal de Circuito, Benjamín Acosta Robles presentó el recurso de certiorari CC-1999-811 ante nos, para revisar la sentencia emitida por el Tribunal de Circuito. Dos días después, el 1 de noviembre, Emiliano H. Ruiz también presentó el recurso de certiorari, CC-1999-817, para revisar la misma sentencia. Como puede observarse, ambos recursos fueron presentados dentro del

---

[11] En la sentencia se determinó que no eran de aplicación la doctrina de cosa juzgada, ni la sentencia por estipulación, según habían alegado como defensas los demandados. El Tribunal de Circuito entonces procedió a devolver el caso a instancia para que se determinase si procedía o no la defensa de prescripción, para la cual entendió habían hechos en controversia que debían dilucidarse mediante vista evidenciaria.

[12] A pesar que en el apéndice de su recurso, el CC-1999-817, el peticionario Emiliano H. Ruiz, incluyó copia de la moción de reconsideración presentada por el codemandado Benjamín Acosta Robles en relación con su recurso, el CC-1999-811, Emiliano H. Robles hizo constar que desconocía "de la existencia de otros recursos sobre el mismo asunto planteado en la ... solicitud que puedan estar pendientes ante [el Tribunal Supremo] o ante el Tribunal de Circuito de Apelaciones." Recurso CC-1999-817, pág 2. Esta aseveración parece indicar que el peticionario Emiliano H. Ruiz consideraba sus planteamientos distintos a los de Benjamín Acosta Robles, tanto en su recurso CC-1999-811 ante nos, como en la reconsideración presentada ante el Tribunal de Circuito.

término de treinta (30) días de haberse notificado la Sentencia del Tribunal de Circuito, pero antes que se les hubiera notificado la resolución denegando la reconsideración.

El 8 de diciembre de 1999, cinco (5) días antes de que venciera el término para presentar nuevamente el recurso presentado originalmente de forma prematura, Benjamín Acosta, Jr. presentó el escrito de apelación AC-1999-69 y Benjamín Acosta Robles radicó una moción informativa. En la moción se nos indicó que el 28 de octubre, el Tribunal de Circuito había denegado la moción de reconsideración y que esta Resolución había sido notificada el 12 de noviembre. En el día de hoy, 8 de febrero de 2000, este Tribunal deniega la expedición del recurso CC-1999-811 por falta de jurisdicción por haber sido presentados prematuramente. Esta determinación tiene la inevitable y fatal consecuencia de que el demandado peticionario Benjamín Acosta Robles ha perdido la oportunidad de presentar, en tiempo, un recurso de certiorari para que revisemos en los méritos la sentencia dictada por el Tribunal de Circuito el 28 de septiembre de 1999.[13]

El razonamiento procesal para la determinación de prematuridad es que al haberse presentado oportunamente ante el Tribunal de Circuito una moción de reconsideración en los casos consolidados KLAN9900428 y KLAN9900599, a tenor con lo dispuesto en la Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. III, según enmendada por la Ley Núm. 247 de 25 de diciembre de 1995, se interrumpió el término para recurrir en alzada y revisar la sentencia previamente emitida. Ese término para solicitar revisión no comenzó a decursar nuevamente hasta que el Tribunal de Circuito resolvió definitivamente la moción de reconsideración y

---

[13] En cuanto al codemandado Emiliano H. Ruiz, el 13 de diciembre de 1999, éste presentó un nuevo recurso haciendo básicamente los mismos planteamientos que en su recurso anterior. Este recurso, el CC-1999-940, el Tribunal lo denegó en los méritos el 28 de enero de 2000, por lo que entendemos se ha tornado académico lo planteado en el recurso CC-1999-817.

notificó el archivo en autos de copia de la notificación de dicha resolución.

En el caso de autos, el recurso de certiorari fue presentado el 29 de octubre de 1999. Al amparo del Art. 3002 (d)(1) de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada por la Ley Núm. 248 de 25 de diciembre de 1995, 4 L.P.R.A. sec. 22i(d)(1), el término para revisar sentencias en recursos de apelación emitidas por el Tribunal de Circuito es uno jurisdiccional de treinta (30) días contados desde la fecha del archivo en autos de copia de la notificación de la sentencia recurrida.[14]

Como vemos, al presentarse el recurso, aún estaba pendiente ante el Tribunal de Circuito la moción de reconsideración. En consecuencia, el término para recurrir en alzada de la sentencia dictada en los recursos consolidados se había interrumpido. Por consiguiente, a tenor con este análisis, el Tribunal Supremo no tenía jurisdicción para entender en los méritos del mismo. De interesar que la sentencia emitida por el Tribunal de Circuito fuera revisada por el Tribunal Supremo, el peticionario tenía que presentar su recurso nuevamente dentro de los treinta (30) días de haberse archivado en autos copia de la resolución resolviendo definitivamente la moción de reconsideración. Esto fue lo que hizo el codemandado Emiliano H. Ruiz al presentar, el 13 de diciembre de 1999, el recurso CC-1999-940.[15]

Como resultado lógico de este frío y técnico análisis, procedía desestimar por falta de jurisdicción el recurso por éste haber sido prematuramente presentado.

Procede que analicemos la trayectoria histórica que nos ha conducido a tan injusto resultado.

II

El 25 de diciembre de 1995, a menos de un año de haber entrado en vigor la Reforma Judicial de 1994, la Legislatura aprobó la Ley Núm. 247, supra, que enmendó la Regla 47 de Procedimiento Civil. Dicha enmienda, tuvo el propósito de simplificar los procedimientos y evitar incertidumbres en cuanto a cuándo comenzaba a decursar el término para recurrir en alzada ante el Tribunal Supremo y así facilitar el cómputo del mismo. Véanse, además: Regla 53.1(h) de Procedimiento Civil, supra,

---

[14] Si la fecha del archivo en autos de copia de la notificación de la sentencia es distinta a la del depósito en el correo, de acuerdo con la Ley Núm. 40 de 10 de enero de 1999 que enmendó la Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III, "el término se calculará a partir de la fecha de depósito en correo."

[15] Este recurso fue denegado el 28 de enero de 2000. La Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Hernández Denton no intervinieron.

y Regla 84 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII.

Dicha Ley estableció que la oportuna presentación de una moción de reconsideración ante el Tribunal de Circuito, interrumpía el término para recurrir en alzada ante el Tribunal Supremo y que éste comenzaría a decursar nuevamente a partir del archivo en autos de copia de la notificación de la resolución o sentencia del Tribunal de Circuito resolviendo definitivamente la moción de reconsideración. Esta Ley cambió dramáticamente el concepto tradicional, o sea, la filosofía prevaleciente sobre el efecto interruptor de la presentación de una moción de reconsideración. Tanto bajo las Reglas de Procedimiento Civil del 1958 como bajo las de 1979, la presentación de una moción de reconsideración sólo tenía el efecto de interrumpir el término para recurrir en alzada cuando ésta era considerada por el tribunal. Además, bajo el anterior Tribunal Apelativo, creado por la Ley Núm. 21 de 13 de julio de 1992 y abolido por la Ley Núm. 11 de 2 de junio de 1993, y originalmente en el Tribunal de Circuito, ésta era la norma procesal que imperaba en cuanto al efecto interruptor de la presentación de una moción de reconsideración. Cabe señalar que ésta es la norma que todavía prevalece en el Tribunal de Primera Instancia.

En Hernández v. Marxuach Const. Co., P.C. de 3 de febrero de 1997, 142 D.P.R. ____ (1997), 97 JTS 16, tuvimos la oportunidad de interpretar la nueva norma interruptora. Allí resolvimos que la presentación oportuna de una moción de reconsideración ante el Tribunal de Circuito privaba al Tribunal Supremo de facultad para entender en cualquier recurso que se presentase para revisar la sentencia o resolución objeto de dicha reconsideración. Aclaramos que, una vez resuelta la moción por el Tribunal de Circuito, no se reactivaba automáticamente el recurso presentado prematuramente ante nos. Luego añadimos, a manera de dictum, ya que esa no era la situación procesal del caso, que "(s)i la parte interesa que revisemos el dictamen del Tribunal de Circuito de Apelaciones, tiene que presentar el recurso

apropiado, ya fuere el de certiorari o apelación, dentro de los términos jurisdiccionales o de cumplimiento estricto provistos por ley." Sin embargo, no discutimos la forma precisa mediante la cual estos llamados "recursos prematuros" debían presentarse nuevamente ante el Tribunal Supremo.

Entendemos que, para beneficio de las partes y la clase togada en general, debemos discutir algunos asuntos procesales y prácticos que dimanan de la situación creada por los llamados "recursos prematuros". Creemos, además, que se deben establecer normas procesales que atiendan adecuadamente los problemas que emanan de estas situaciones de forma tal que se cumpla con el propósito del derecho procesal de optimizar la celeridad y economía procesal como medio para alcanzar una solución justa. Es decir, hacer viable la determinación en los méritos de los derechos sustantivos de las partes y garantizar la "solución justa, rápida y económica de todo procedimiento." Regla 1 de Procedimiento Civil, supra.

III

Para propósitos de nuestra discusión, definiremos "recursos prematuros" como aquellos que se presentan ante el Tribunal Supremo cuando aún está pendiente de resolver ante el Tribunal de Circuito una moción de reconsideración.

Reiteradamente hemos resuelto que la función de la moción de reconsideración es brindarle al tribunal que emite una sentencia o resolución, en este caso el Tribunal de Circuito, la oportunidad de revisar su propio dictamen y si así lo entiende apropiado, modificarlo o revocarlo. Lagares v. E. L. A., Op. de 23 de diciembre de 1997, 144 D.P.R. _____ (1997) 97 JTS 149, pág. 413; El Mundo, Inc. v. Tribunal Superior, 92 D.P.R. 791, 796; Amador v. Cortés, 54 D.P.R. 821 (1939); Dávila v. Collazo, 50 D.P.R. 494, 503 (1936).

Con anterioridad a la aprobación de la Ley Núm. 247, supra, en algunos casos surgían circunstancias que creaban incertidumbre en cuanto a si el Tribunal de Circuito había o no considerado la moción de reconsideración y por ende si se había interrumpido el término para recurrir ante el Tribunal Supremo. Contribuía a esta inestabilidad el hecho que la notificación de la determinación del Tribunal de Circuito considerando la moción, y por consiguiente interrumpiendo el término, en muchos casos no se hacía en la misma fecha en que se tomaba la determinación o aun en una fecha cercana. Para evitar quedarse sin la oportunidad para recurrir en alzada, se desarrolló entre los miembros de la clase togada, de manera preventiva, la práctica de presentar el recurso ante el Tribunal Supremo si ya cercano el vencimiento del término para presentarlo, la moción de reconsideración no había sido considerada o resuelta o no se había notificado la acción tomada. Si el Tribunal de Circuito aún no había considerado la moción o notificada dicha consideración, la presentación del recurso ante el Tribunal Supremo tenía el efecto de privar al tribunal apelado de su jurisdicción para entender en la misma. El caso pasaba inmediatamente a la consideración del Tribunal Supremo. No cabe duda que este procedimiento causó innumerables problemas, especialmente en cuanto a la determinación de cuándo había ocurrido la interrupción, o sea, cuál tribunal tenía jurisdicción para entender en el caso. La Ley Núm. 247, supra, trató de corregir estas dificultades simplificando el proceso. Lo que no visualizó el legislador fueron las nuevas modalidades de problemas que la naturaleza humana y las prácticas administrativas crearían.

Algunos abogados, confrontados con las nuevas realidades procesales comienzan a dudar, a inquietarse cuando el Tribunal de Circuito no decide la moción de reconsideración antes de que transcurra, o esté a punto de transcurrir, el término para recurrir en alzada. Temen que este término venza mientras ellos esperan a que el Tribunal de Circuito resuelva. Ante esta circunstancias, optan por proceder como lo hacían antes de la Ley Núm. 247, supra, y presentan el recurso de certiorari ante el Tribunal Supremo. Esta actuación preventiva, y que en cierta medida podría entenderse como exceso de celo y diligencia, puede provocar aquéllo que precisamente tratan de evitar: la pérdida del derecho a que el Tribunal Supremo tenga la oportunidad de decidir si revisa o no el dictamen del Tribunal de Circuito en los méritos.

Es evidente que este modo de actuar refleja el desconocimiento de algunos abogados de las múltiples enmiendas que han sufrido las reglas procesales y las estructuras judiciales en los últimos años y la

jurisprudencia interpretativa de las mismas. También denota la inseguridad que estos cambios han causado. En muchos casos surge con meridiana claridad la confusión de los letrados en cuanto a los trámites a seguir y las consecuencias procesales y sustantivas de optar por un curso de acción u otro. No nos cabe duda que nuestras múltiples resoluciones desestimando los recursos presentados por falta de jurisdicción, o por craso incumplimiento con nuestro Reglamento han contribuido, y hasta podríamos decir fomentado, este sentido de inseguridad.

Veamos qué ocurre después que se presenta el recurso en la Secretaría del Tribunal Supremo.

Una vez radicado en la Secretaría el original del recurso con las copias correspondientes, éste y las copias se sellan como recibidas con la fecha y hora de presentación. Inmediatamente se le asigna el número correspondiente y entra en el registro manual y electrónico de casos del Tribunal. Luego, una de las copias se envía al Panel Central de Investigación. Éste consiste de un grupo de abogados que tienen la encomienda de examinar, de forma preliminar, los recursos. Cotejan, entre otras cosas, el cumplimiento con las reglas procesales y hacen una recomendación sobre el particular. Luego examinan los méritos del recurso y hacen una recomendación sobre si éste debe o no ser expedido. Como regla general, el recurso tarda de seis (6) a ocho (8) semanas en lo que se trae a la atención del Tribunal, esto es, se turna para Pleno. El Pleno es la reunión que semanalmente, usualmente los viernes, tienen todos los Jueces. A cada Juez se le envía con anticipación una copia de los recursos que se discutirán con el memorando que ha preparado el Panel Central. En la reunión del Pleno se analizan todos los recursos, mociones y asuntos que han sido traídos a la atención del Tribunal por la Secretaría. Luego los Jueces votan y, por mayoría, se decide cuáles recursos se expedirán, en cuáles se emitirá una orden para mostrar causa por la cual debe expedirse y

revocar y cuáles se denegarán.[16] Una vez se toma la decisión sobre el recurso, las copias se desechan. El Tribunal conserva oficialmente únicamente el original del recurso.[17]

Ahora bien, ya para ese momento es probable que esté resuelta cualquier moción de reconsideración que hubiese estado pendiente ante el Tribunal de Circuito cuando se presentó el recurso ante el Tribunal Supremo. También es muy probable que el término para recurrir en alzada desde el archivo en autos de copia de la resolución resolviendo definitivamente la reconsideración, ya hubiese transcurrido. Si la parte peticionaria no ha hecho nada en el ínterin, también es muy probable que su exceso de celo y diligencia, combinada con su subsiguiente inacción, haya privado al Tribunal Supremo de la oportunidad de entender en el recurso en sus méritos.

Para propósitos de poder esbozar con mayor claridad nuestras preocupaciones en esta área del derecho procesal apelativo, creemos que debemos analizar lo que ocurre cuando se presenta una moción de reconsideración ante el Tribunal de Circuito.

Su presentación puede tener en esencia dos consecuencias. Primero, que el tribunal la conceda y decida revisar su dictamen, ya fuere revocándolo o modificándolo. En este caso cualquier recurso que haya sido presentado previamente en alzada pierde finalidad o su razón de ser. Los argumentos allí esbozados tendrán que ser modificados tomando en consideración las nuevas realidades tanto procesales como sustantivas. Por consiguiente, estos casos usualmente no ofrecen problemas procesales en el trámite apelativo de la naturaleza de los que estamos discutiendo. Segundo, el tribunal puede simplemente

---

[16] En algunos casos en que el error planteado es patentemente claro, el Tribunal puede optar por acortar el trámite apelativo y emitir, sin ulteriores procedimientos, una sentencia o una Opinión Per Curiam al amparo de la Regla 50 del Reglamento del Tribunal Supremo. El Tribunal también puede optar por darle un término a la parte recurrida para que se exprese antes de decidir si expide o no el recurso.

[17] Algunos Jueces para facilitar el estudio posterior de la moción en cumplimiento de orden que se presente o la consideración del caso en sus méritos, conservan copia de los recursos que se han expedido o en los cuales se ha emitido una orden para mostrar causa.

denegar la moción de reconsideración, permaneciendo, pues, inalterada la resolución o sentencia. Esta es la situación que causa problemas.

Bajo esta segunda alternativa, cualquier recurso presentado ante el Tribunal Supremo, aunque prematuro, resulta adecuado para llevar a cabo la revisión que se solicita. Es decir, no tiene que ser alterado o modificado para que se puedan revisar adecuadamente los errores planteados. En otras palabras, los señalamientos de error y su discusión son exactamente los mismos antes y después de denegada la reconsideración.

A pesar de lo antes expuesto, hemos resuelto que la resolución de la moción de reconsideración y su subsiguiente notificación, no reactiva o subsana automáticamente las consecuencias de la presentación prematura. Por el contrario, hemos determinado que el Tribunal carece de jurisdicción para entender en el recurso. Como dogma impregnado de autoridad hemos dictaminado que si el peticionario interesa que se revise el dictamen tiene que presentar "el recurso apropiado", ya fuere apelación o certiorari, dentro de los términos dispuestos por ley. Nuestra postura requiere que se vuelva a radicar en la Secretaría del Tribunal Supremo el mismo recurso que se había presentado previamente de forma prematura. En la práctica, bastaría cambiarle al recurso y sus copias, la carátula y la última página para reflejar el nuevo número asignado y la nueva fecha de presentación. También habría que añadir al apéndice copia de la resolución resolviendo la reconsideración y el correspondiente volante de notificación.[18] Nos parece que exigir el trámite antes descrito, además de ser absurdo, derrota la razón de existir misma del ordenamiento procesal: administrar justicia rápida y económica.

---

[18] Sin embargo, podría darse la situación de que se tengan que presentar nuevamente las nueve (9) copias del recurso y sus apéndices, pues para cuando se deniega finalmente la moción de reconsideración por el Tribunal de Circuito es probable que las copias del recurso originalmente presentadas ante el Tribunal Supremo, hayan sido desechadas, quedando sólo el original del recurso en el archivo.

Las consecuencias de nuestro conservadurismo procesal extremo son costosas en términos de tiempo, esfuerzo y recursos.[19] Además, la interpretación <u>inflexible</u> de las normas jurisdiccionales ha producido, en el mejor de los casos, dilaciones en la solución de las controversias, en el peor, un fracaso de la justicia. En suma, la norma procesal que surge de nuestra interpretación no adelanta objetivo procesal alguno y desvirtúa la intención legislativa de facilitar el acceso a tribunales. Cualquier interpretación de una disposición legal o reglamentaria que conduzca a una conclusión absurda, debe ser rechazada. Véase, <u>Mun. SJ</u> v. <u>Banco Gub. Fomento</u>, Op. de 21 de mayo de 1996, 140 D.P.R. ___, 96 JTS 73, a la pág. 1145. "[T]enemos la obligación de armonizar hasta donde sea posible todas las disposiciones de ley envueltas para lograr el resultado más sensato, lógico y razonable". Id. citando con aprobación a <u>Andino</u> v. <u>Fajardo Sugar Co.</u>, 82 D.P.R. 85, 94 (1961). Este deber cobra aún mayor relevancia cuando se trata de interpretar reglas procesales que han sido aprobadas para facilitar la tramitación de los recursos radicados ante el Tribunal Supremo.

El Tribunal debería auscultar la posibilidad de considerar actuaciones alternas que salven el dilema. Tenemos el deber de no exigir trámites innecesarios y costosos que en nada contribuyen a la justa solución de las controversias. Exhorto a los tribunales, especialmente al Tribunal Supremo, a evitar el automatismo procesal con sus trágicas consecuencias.

Estamos frente a la pérdida del derecho de unas partes a que el Tribunal Supremo decida si el recurso que han presentado amerita ser expedido y revisado en los méritos. Al determinar que este fue presentado prematuramente y por lo tanto no hay jurisdicción, el Tribunal no atiende los méritos de los planteamientos de error señalados. Las partes han puesto su fe en el sistema, no debemos defraudarlas en aras de preservar unos principios procesales que, ante las circunstancias expuestas, poco o nada aportan a la consecución de la justicia y por ende resultan, a nuestro entender, totalmente insostenibles.

---

[19] Cabe recordar que, por lo general, la posterior presentación de estos recursos prematuros requiere se reproduzcan nuevamente el original y nueve (9) copias del recurso y sus apéndices. Esto se traduce en el derroche inconsciente e innecesario de miles de hojas de papel con su correlativa dilapidación ambiental. Parecemos actuar en contrario a la posición protectora de los recursos naturales adoptada en nuestras Opiniones. En este caso particular se trata de dos (2) recursos de casi dos mil (2,000) páginas cada uno, lo que multiplicado por diez (10) resulta en un malgasto aproximadamente de cuarenta mil (40,000) hojas de papel.

Ahora bien, la resolución del Tribunal Supremo de 28 de enero de 2000, en un recurso relacionado con el caso de autos, el CC-1999-940, nos llena de esperanza, pues parece reflejar un cambio interpretativo, que, aunque pequeño, modera en algo la severa actitud procesal que el Tribunal había asumido y que hemos reseñado. Sinceramente esperamos que estemos ante un cambio de actitud, ante la adopción de una mayor flexibilidad. Con relación a dicho recurso el Tribunal no sólo aceptó un desestimiento voluntario del recurso CC-1999-817, sino que también consideró los documentos que obraban en el Apéndice de dicho recurso para evaluar en los méritos otro recurso, el CC-1999-940.[20] En otras palabras completó un apéndice con el otro.

Cabe señalar que la parte había solicitado la devolución de dichos documentos para poder confeccionar a un costo menor el nuevo recurso.

IV

Analicemos las normas procesales antes discutidas a la luz de los hechos específicos de este caso.

Los problemas procesales que tienden a confundir comenzaron en el tribunal de instancia cuando en un caso donde habían múltiples partes y reclamaciones, el foro de instancia dictó lo que aparentemente pretendió fueran varias sentencias sumarias parciales. Una de ellas la emitió el 30 de marzo de 1999 y la tituló resolución. En ésta, el tribunal de instancia, omitió determinar de forma expresa, según lo

---

[20] Con esa misma actitud de liberalidad en el caso Ruiz Cáceres v. P.R. Tel. Co., CC-2000-43, el 2 de febrero de 2000, emitimos unánimemente una resolución en un caso que se había presentado prematuramente. En esta resolución desestimamos el recurso por falta de jurisdicción, pero al hacerlo le indicamos al peticionario que, de así desearlo, podía presentarlo nuevamente dentro del término jurisdiccional correspondiente. Además expresamos lo siguiente:

> A solicitud de parte, para facilitar el trámite y en aras de la economía procesal, la Secretaría del Tribunal queda autorizada a desglosar los documentos de este recurso, salvo los originales. Una vez desglosadas las copias del recurso, la parte podrá proceder a sustituirles la carátula, para que refleje el nuevo número de presentación, y última página, con la firma y nueva fecha de presentación. Además, tendría que anejarles al apéndice copia de la resolución denegando la reconsideración y del volante de notificación antes de presentar nuevamente el recurso.

requiere la Regla 43.5 supra, que no era necesario esperar hasta que finalizase el caso en su totalidad para dictar la sentencia parcial. La sentencia así dictada no adquirió finalidad hasta que el caso finalizó al resolverse el resto de las reclamaciones. En esta resolución se desestimaron todas las reclamaciones contra Emiliano H. Ruiz.

Un día después, el 31 de marzo, el foro de instancia dictó otra sentencia parcial, esta vez desestimando las reclamaciones contra Benjamín Acosta Robles. Ambas determinaciones, la sentencia y la resolución, se notificaron el 6 de abril.

Apenas un mes más tarde, el 7 de mayo, instancia dictó otra sentencia sumaria, esta vez desestimando las reclamaciones contra Benjamín Acosta, Jr. Esta Sentencia se notificó el 12 de mayo. Según expresáramos anteriormente estas mismas reclamaciones ya habían sido previamente objeto de solicitud de sentencia sumaria la cual fue, de forma contradictoria, concedida en una ocasión y denegada en otra. De ninguna de estas determinaciones se solicitó revisión ante el Tribunal de Circuito.

Así las cosas y para complicar la situación procesal un poco más, obviamente confundido por el hecho de que el foro de instancia había emitido dictámenes por separado para desestimar reclamaciones contra distintas partes, el demandante Empress presentó, el 28 de abril, dos recursos de apelación distintos ante el Tribunal de Circuito para revisar las actuaciones del foro de instancia en un mismo caso. Realmente se trataba de una sola sentencia a la cual se incorporó tácitamente la resolución del 30 de marzo. A pesar de la confusa postura procesal del caso causada en gran parte por las actuaciones contradictorias del foro de instancia, entendemos que fue al notificarse la sentencia del 31 de marzo, que se entendió finalizado el

---

Por su valor ilustrativo y para orientar a la profesión legal en cuanto al aspecto jurisdiccional procesal apelativo, ordenamos la publicación de esta Resolución.

caso y comenzó a decursar el término para recurrir en alzada para los codemandados Benjamín Acosta Robles y Emiliano H. Ruiz.

El Tribunal de Circuito consolidó los recursos y el 28 de septiembre dictó sentencia mediante la cual revocó tanto la resolución del 30 de marzo como la sentencia del 31 de ese mismo mes. Esta sentencia se notificó el 1 de octubre. Oportunamente,[21] el 18 de octubre, Benjamín Acosta Robles presentó una moción de reconsideración. Emiliano H. Ruiz, optó por no pedir reconsideración. Acudió directamente al Tribunal Supremo para revisar el dictamen en su contra. Aparentemente no se dio cuenta que estaba ante la consolidación de dos (2) recursos y no de dos (2) pleitos. Al parecer entendió que la reconsideración presentada por otro codemandado Banjamin Acosta Robles en relación con las reclamaciones en contra de éste, no afectaban su recurso ni las reclamaciones en su contra. Véase Cuadrado v. García, 99 D.P.R. 154, 157 (1970); Hernández Colón, Práctica Jurídica de Puerto Rico, , Cap. 36, secs. 3601, págs. 260,262, Michie of P.R., Inc., 1997.

De otra parte, Benjamin Acosta Robles, al ver que el Tribunal de Circuito no resolvía la reconsideración y que el término original para recurrir en alzada estaba por vencer, también decidió presentar un recurso de certiorari ante el Tribunal Supremo. Este recurso fue presentado el 28 de octubre, un día después que el Tribunal de Circuito hubiese resuelto la moción de reconsideración, pero quince (15) días antes que esta determinación se le hubiese notificado, el 12 de noviembre.

El 8 de diciembre, cinco (5) días antes de vencer el término que tenían las partes para presentar nuevamente ante el Tribunal Supremo los recursos presentados prematuramente, Benjamín Acosta Robles presentó ante nos una moción en la que nos informó que la moción de reconsideración había sido resuelta por el Tribunal de Circuito el 28 de octubre y notificada el 12 de noviembre.

---

[21] Los quince (15) días que tenía para presentar dicha moción vencieron el sábado, 16 de octubre, por lo que se presentó en tiempo el próximo día laborable, el lunes 18 de octubre.

Éstas son las circunstancias procesales que desembocan en la desestimación del recurso CC-1999-811 por falta de jurisdicción por prematuridad que hoy decreta este Tribunal. Si en vez de presentar la moción informativa, Benjamín Acosta Robles hubiese presentado el mismo recurso que se hallaba frente al Tribunal, cambiándole sólo la carátula y la última página para que reflejasen la nueva fecha y número de radicación y le hubiese añadido al Apéndice copia de la resolución que denegó la moción de reconsideración y del volante de notificación, no hubiéramos tenido problemas de falta de jurisdicción, simplemente gastos considerables adicionales para las partes perdidosas, pues el recurso consiste en dos tomos de más de dos mil (2,000) páginas. Esta duplicación de esfuerzos y recursos nos parece ridícula e innecesaria. Otra alternativa igualmente absurda, a nuestro entender, pero más aceptable para el Tribunal, hubiese sido que en vez de presentar la moción informativa, hubiese presentado una moción de desglose acompañada de original y nueve (9) copias de la nueva carátula, la última página del recurso, copias de la resolución denegando la reconsideración y del volante de notificación, para que éstas se anejaran al original y las copias del recurso que se había presentado prematuramente convirtiéndolo así en un nuevo recurso.[22] Una modalidad de esta alternativa fue la utilizada por el codemandado Emiliano H. Ruiz en su recurso CC-1999-940 y lo sugerido por este Tribunal en su Resolución de 2 de febrero de 2000 en el caso CC-2000-43.

Cabe señalar que en la reunión del Pleno donde se consideró y discutió el recurso CC-1999-811, todos los Jueces tenían copia del mismo y de la moción informativa.

Tomando en consideración el carácter inminentemente pragmático de la norma procesal que toda interpretación de las reglas procesales debe

---

[22] En la moción de desglose podría solicitarse también que el Tribunal físicamente le devolviese a los peticionarios el original y las copias del recurso prematuramente presentado para que estos peticionarios hicieran la sustitución de las páginas correspondiente y lo radicasen nuevamente en Secretaría. En ambos casos se trataría de una moción de desglose sui géneris. Lo que se pretende es lograr que el Tribunal le ponga la nueva fecha y número al recurso que ya fue presentado, para convertirlo así en un nuevo caso.

conducir a lograr el mayor resultado con el mínimo de actividad procesal, no vemos por qué no se pueda entender que la moción informativa presentada dentro del término que se tenía para recurrir nuevamente en alzada es un mecanismo procesal que, aunque distinto al tradicional, resulta suficiente y apropiado para que se entienda radicado nuevamente el recurso que había sido presentado prematuramente. La moción definitivamente refleja la clara intención del peticionario de que el Tribunal Supremo revise en los méritos la sentencia dictada por el Tribunal de Circuito y la resolución de la moción de reconsideración en nada alteró o varió los planteamientos de error que se intentan revisar. Francamente no vemos qué propósito práctico o jurídico se sirve al exigir duplicar la misma labor.

Entendemos que los hechos procesales de este caso y los resultados a que llega la mayoría del Tribunal Supremo, hacen imperativo el que se revisen tanto las leyes como los reglamentos que rigen la práctica apelativa, al igual que la forma de interpretarlas que hasta ahora han seguido tanto el Tribunal Supremo como el Tribunal de Circuito.

Por las razones antes expuestas, disentimos de la determinación que hoy hace la mayoría de este Tribunal al denegar el recurso CC-1999-811 por falta de jurisdicción por éstos haber sido presentado prematuramente. Consideraríamos el recurso en los méritos y, contrario a la mayoría según lo refleja su determinación en el caso CC-1999-940, hubiésemos expedido para tener la oportunidad de estudiar con mayor detenimiento los serios planteamientos que allí se hacen.

MIRIAM NAVEIRA DE RODÓN
JUEZ ASOCIADA