EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| M & R Developers, S.E.<br>      Recurrido<br><br>            v.<br><br>Banco Gubernamental de Fomento para Puerto Rico;<br>Departamento de Salud<br>      Peticionarios | Certiorari<br><br>2001 TSPR 34 |
| --- | --- |

Número del Caso: CC-2000-693
                        CC-2000-730

Fecha: 12/marzo/2001

Tribunal de Circuito de Apelaciones:
                        Circuito Regional I

Panel integrado por su Presidenta, la Jueza Fiol Matta, la Jueza Rodríguez de Oronoz y el Juez González Román

Abogado de la Parte Peticionaria:
                        Lcdo. Luis Edwin González Ortiz

Abogado de la Parte Recurrida:
                        Lcdo. Pedro José Cruz Soto

Oficina del Procurador General:
                        Lcdo. Sigfredo Rodríguez Isaac
                        Procurador General Auxiliar

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

M & R Developers, S.E.

    Recurrido

        vs.                       CC–2000–693       CERTIORARI
                                   CC–2000–730

Banco Gubernamental de
Fomento para Puerto Rico;
Departamento de Salud

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 12 de marzo de 2001

      En los recursos de epígrafe está en controversia si el Tribunal de Circuito de Apelaciones erró, o no, al declarar <u>sin</u> lugar una moción de desestimación que ante dicho foro apelativo intermedio radicaran tanto el Banco Gubernamental de Fomento como el Departamento de Salud de Puerto Rico —en relación con un recurso de revisión judicial que presentara la recurrida M&R Developers, S.E.— predicada la misma en un alegado incumplimiento con el reglamento de dicho foro apelativo de parte de la antes mencionada recurrida. Consolidamos y expedimos dichos recursos.

      El Tribunal se encuentra igualmente dividido; esto es, el Juez Presidente señor

Andréu García, la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri entienden que no erró el foro apelativo intermedio al denegar la moción de desestimación, mientras que los Jueces Asociados señores Rebollo López y Corrada del Río son del criterio que la parte recurrida M&R Developers, S.E., incurrió en craso incumplimiento con el reglamento del Tribunal de Circuito de Apelaciones, razón por la cual entienden procedía la desestimación solicitada y el Juez Asociado señor Hernández Denton entiende que el referido tribunal apelativo intermedio carece de jurisdicción para entender en el recurso radicado por razón de estimar que la determinación del Departamento de Salud de Puerto Rico no puede ser objeto de un recurso de revisión judicial administrativo y sí de un pleito independiente. El Juez Asociado señor Rivera Pérez está inhibido.

Se confirma, en consecuencia, la resolución emitida por el Tribunal de Circuito de Apelaciones en los presentes casos por razón de estar igualmente dividido el Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión de conformidad a la cual se unió la Juez Asociada señora Naveira de Rodón. El Juez Asociado señor Rebollo López emitió Opinión disidente. El Juez Asociado señor Rivera Pérez inhibido.


Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

M & R  Developers, S. E.

     Recurrido

       vs.                         CC–2000–693     Certiorari
                                     CC–2000–730

Banco Gubernamental de Fomento
para Puerto Rico; Departamento
de Salud

     Peticionarios

Opinión de Conformidad emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se une la Juez Asociada señora Naveira de Rodón.

San Juan, Puerto Rico, a 12 de marzo de 2001.

En el caso de autos, nos toca revisar el dictamen del foro apelativo que se identifica a continuación.

Se trata de un dictamen del Tribunal de Circuito de Apelaciones, en virtud del cual determinó que la propuesta presentada por el recurrido M & R Developers para la compra de una clínica, que fue rechazada por el Comité de Privatización[1], no era imprescindible para que ese foro apelativo pudiese considerar el recurso presentado ante sí por M & R Developers para cuestionar el rechazo referido. Concurro con el foro

---

[1] Comité intergubernamental integrado por funcionarios del Banco Gubernamental de Fomento y del Departamento de Salud.

apelativo en cuanto a que la omisión de incluir en el apéndice del aludido recurso una copia de la propuesta referida no constituyó un incumplimiento con su Reglamento. Por ende, estimo que no erró el Tribunal de Circuito de Apelaciones al no desestimar el recurso en cuestión por dicha omisión.

En el caso de autos, la propuesta aludida no sólo fue descrita en sus detalles esenciales en la propia solicitud de revisión de M & R Developers presentada ante el Tribunal de Circuito de Apelaciones sino que, además, la impugnación que hizo M & R Developers en su recurso ante el foro apelativo se fundamentó en que el Comité de Privatización había rechazado su propuesta **<u>sin haber indicado las razones para rechazarla y sin que dicho Comité tuviese normas o parámetros conocidos para la evaluación de propuestas como las de este caso</u>**. Es decir, el recurso no planteaba cuestión alguna sobre el contenido de la propuesta particular de M & R Developers. Sólo se cuestionaba la carencia de normas para evaluar esa o cualquier otra propuesta. Parece evidente, pues, que para considerar el planteamiento específico de M & R Developers no era necesario referirse de modo alguno a su propuesta particular, aunque de cualquier forma, ésta fue resumida en el escrito de revisión.

En vista de lo anterior, fue correcta la determinación del foro apelativo de que la omisión de incluir copia de la propuesta referida en el apéndice del recurso que tuvo ante sí no constituía un defecto que requiriese la desestimación de dicho recurso.

No cabe duda de que la Regla 59(E) del Reglamento del Tribunal de Circuito de Apelaciones, establece que debe incluirse, como parte del apéndice del recurso de revisión, una copia de toda resolución u orden y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original administrativo, en las cuales se discuta expresamente cualquier asunto planteado en la solicitud de revisión, o que sean relevantes a ésta; y de cualquier otro documento que forme parte del expediente original ante la agencia que pueda serle útil a dicho foro apelativo para resolver la controversia que tiene ante sí.

Sin embargo, como hemos señalado antes, no todo incumplimiento con los requisitos procesales o reglamentarios justifica la desestimación del recurso. <u>Arriaga v. F.S.E.</u>, opinión del 18 de marzo de 1998, 145 D.P.R. ___, 98 TSPR 27, 98 JTS 28. Ello es así porque el principio rector de que las controversias judiciales, en lo posible, se atiendan en los méritos, <u>Echevarría Jiménez v. Sucn. Pérez Mari</u>, 123 D.P.R. 664, 673 (1989); <u>Garriga Gordils v. Maldonado Colón</u>, 109 D.P.R. 817, 822-823 (1980); <u>Arce v. Club Gallístico de San Juan</u>, 105 D.P.R. 305 (1976); <u>Acevedo v. Compañía Telefónica de P.R.</u>, 102 D.P.R. 787, 791 (1974); <u>Ramírez de Arellano v. Srio. de Hacienda</u>, 85 D.P.R. 823, 829 (1962), es aplicable en el derecho apelativo en relación con la desestimación de recursos por incumplimiento de requisitos reglamentarios para su perfección. <u>Droguería Central, Inc. v. Diamond Pharmaceuticals Ser., Inc.</u>, res. el 19 de enero de 2000, 150 D.P.R. ___, 2000 TSPR 5, 2000 JTS 19. En efecto, la flexibilidad en la interpretación de las normas procesales cobra especial relevancia cuando se trata de una determinación de jurisdicción, pues son éstas las que abren o cierran las

puertas de entrada a los tribunales apelativos. En ocasiones, en nuestro afán de hacer valer las reglas, las aplicamos literalmente y perdemos de vista que las normas procesales no tienen vida propia. Estas sólo existen para hacer viable la determinación de los derechos sustantivos de las partes y la resolución de forma pacífica de las controversias. Dávila v. Hosp. San Miguel, Inc., 117 D.P.R. 807, 816 (1986).[2]

Para determinar si una omisión como la que aquí nos concierne justifica la desestimación del recurso o no, es menester tomar en cuenta el propósito fundamental que persigue la Regla 59(E) del Reglamento del Tribunal de Circuito de Apelaciones al señalar los documentos que deben incluirse como parte del apéndice de la solicitud de revisión. **Tal inclusión de documentos sólo persigue que el foro apelativo tenga todos los elementos de juicio que sean necesarios o útiles para que dicho foro pueda resolver cabalmente el recurso ante su consideración.** Por ende, la desestimación del recurso por dejar de incluir uno de los documentos reglamentarios sólo procede cuando tal omisión impida o haga difícil que el foro apelativo pueda resolver cabalmente el asunto ante su consideración. Dicho de otra forma, si el documento omitido no es realmente necesario o útil para que el tribunal apelativo pueda realizar bien su función revisora, entonces no debe desestimarse el recurso. En tales circunstancias, puede estimarse que el peticionario ha cumplido en forma sustancial con los requisitos reglamentarios.

Como se ha señalado antes, en el caso de autos la copia de la propuesta en cuestión no era de modo alguno necesario para resolver la controversia específica que tenía ante sí el

---

[2] Véase, voto particular disidente de la Juez Asociada señora Naviera de Rodón en Empress Hotel, Inc. v. Acosta, res. el 8 de febrero de 2000, 150 D.P.R.___, 2000 TSPR 18, 2000 JTS 49.

foro apelativo. Dicha controversia giraba en torno a la ausencia de normas para evaluar la propuesta en cuestión o cualquier otra. El asunto referido no requería dilucidar cuestión concreta alguna sobre dicha propuesta. Además, como también se señaló antes, la esencia de la propuesta estaba resumida en la propia solicitud de revisión de la parte peticionaria. Una copia del documento omitido, pues, no era realmente necesaria o útil para que el tribunal apelativo pudiera realizar bien su función revisora. En tales circunstancias, no tendría sentido despojar a la parte de su derecho a revisión por la omisión referida.

Por todo lo anterior, he votado para confirmar el dictamen del foro apelativo.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


M & R  Developers, S. E.

    Recurrido

       v.                     CC-2000-693     CERTIORARI
                                     CC-2000-730

Banco Gubernamental de Fomento
para Puerto Rico; Departamento
de Salud

    Peticionarios


Opinión disidente emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ


San Juan, Puerto Rico, a 12 de marzo de 2001


El 16 de marzo de 2000, M&R Developers, S.E. (M&R) presentó una propuesta ante el Comité de Privatización (Comité) para la compra de la Clínica Dr. E. Fernández García (Clínica). El 8 de mayo de 2000, el Comité, en específico, el Presidente Interino del Banco Gubernamental de Fomento para Puerto Rico (Banco), Carlos A. Colón Armas, y la Secretaria del Departamento de Salud (Salud), Carmen Feliciano Vda. de Melecio, le notificaron a Asbertly Rosa, Contralor de M&R, que la propuesta presentada por M&R no había sido favorecida. Por entender que su propuesta cumplía con los

requisitos para participar, M&R presentó un escrito ante el Comité de Privatización impugnando la decisión, y, solicitando que se detallaran las razones por las cuales su propuesta no había sido favorecida.

Ante la inacción del Comité de Privatización, el 8 de junio de 2000, <u>M&R presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones, Circuito Regional I de San Juan</u>. Posteriormente, el 16 de junio de 2000, el Banco solicitó la <u>desestimación del recurso</u> alegando que el foro apelativo intermedio no tenía jurisdicción para considerar dicho recurso. En síntesis, el Banco adujo que el procedimiento de evaluación de propuestas no era un procedimiento adjudicativo, y que por lo tanto, no estaba sujeto a revisión judicial.

El 20 de julio de 2000, el Procurador General de Puerto Rico, en representación de la Secretaria del Departamento de Salud, compareció ante el foro apelativo intermedio uniéndose a la moción de desestimación presentada por el Banco. <u>El Departamento adujo, además, que el foro apelativo no tenía jurisdicción debido a que M&R no había incluido en el apéndice del recurso copia de la solicitud de propuesta del Departamento de Salud y copia de la propuesta presentada por M&R ante el Comité de Privatización</u>. El 13 de julio de 2000, M&R presentó una réplica a la moción de desestimación por falta de jurisdicción, en donde alegó que el rechazo de su propuesta por el Comité constituía una adjudicación contraria a derecho, solicitando del tribunal que ordenara la paralización de todos los procedimientos contractuales relacionados con la Clínica.

Posteriormente, el 31 de julio de 2000, M&R presentó una moción solicitando la paralización de los procedimientos de privatización de la Clínica. El 3 de agosto de 2000, el Banco presentó una dúplica a la réplica presentada por M&R. Así las cosas, el 4 de agosto de 2000, el foro apelativo intermedio emitió una resolución ordenando la paralización de los procedimientos de privatización en cuanto a la Clínica Dr. E. Hernández García.

De esa resolución, el 8 de agosto de 2000, <u>recurrió ante nos el Banco</u>. En su señalamiento de errores, alega que el tribunal apelativo intermedio erró:

A.     "... al adquirir jurisdicción en un caso en donde la legislatura en forma expresa y clara determinó que no la tiene.

B.     ... al ordenar la paralización del proceso de privatización en cuanto a la Clínica Dr. E. Fernández García, sin haber considerado los criterios establecidos por este Tribunal para llegar a dicha determinación."[3]

Examinadas la solicitud de *certiorari* presentada por el Banco, y la moción en auxilio de jurisdicción, el 11 de agosto de 2000, emitimos Resolución concediéndole el término de

---

[3] Además, en esa misma fecha, el Banco presentó una solicitud de orden en auxilio de jurisdicción.

veinte días a la parte recurrida para mostrar causa por la cual este Tribunal no debía expedir el auto y dictar sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones. Además, en auxilio de nuestra jurisdicción, ordenamos la paralización de los procedimientos a nivel del Tribunal de Circuito de Apelaciones.

Varios días después, el 25 de agosto de 2000, el Banco compareció mediante "MOCION URGENTE PARA QUE EL TRIBUNAL PROTEJA SU JURISDICCIÓN". De la misma surge que el 18 de agosto de 2000, el Tribunal de Circuito de Apelaciones emitió una resolución en la que, en síntesis, concluyó que las determinaciones del Comité respecto al proceso de privatización eran judicialmente revisables. En cuanto a los documentos que no fueron incluidos en el apéndice, el foro intermedio apelativo concluyó que: contrario a lo que alegó Salud, la solicitud de propuestas forma parte del apéndice; y, que la propuesta presentada por M&R no era imprescindible para considerar el recurso, por lo que su ausencia no ameritaba la desestimación del recurso.

Posteriormente, el 5 de septiembre de 2000, Salud, inconforme con las resoluciones del Tribunal de Circuito de Apelaciones, presentó recurso de *certiorari* señalando que dicho tribunal había errado:

A.        "...al emitir una orden paralizando el procedimiento de contratación para la venta de la Clínica Dr. E Fernández García.

B.         ... al denegar la moción de desestimación por falta de jurisdicción por incumplimiento con las disposiciones de su reglamento."

En cumplimiento con la orden para que mostrara causa, el 5 de septiembre de 2000, compareció ante nos M&R. En síntesis, alegó que debido a la falta de guías claras, la determinación del Comité fue realizada en forma arbitraria y caprichosa. Además, adujo que, las claras violaciones e irregularidades en la adjudicación de la Clínica, lo privaron de su derecho propietario sin el debido proceso de ley.

Por su parte, el 8 de septiembre de 2000, compareció ante nos el Banco, solicitando la consolidación del recurso presentado por éste y el presentado por Salud.

Contando con la comparecencia de todas las partes, decidimos revisar, consolidamos los recursos y expedimos.

I

En el caso ante nos, el 11 de agosto de 2000, emitimos una orden paralizando los procedimientos ante el Tribunal de Circuito de Apelaciones. No obstante, según surge de los documentos en autos, luego de emitida dicha orden, el 18 de agosto de 2000 dicho foro emitió una resolución.

Como es sabido, la presentación de una solicitud de *certiorari* ante el Tribunal Supremo no suspende los procedimientos ante el Tribunal de Circuito de Apelaciones o el Tribunal de Primera Instancia. 4 L.P.R.A. sec. 22j. Sin embargo, La Regla 28(a) de nuestro

Reglamento dispone que este Tribunal "podrá expedir una orden provisional en auxilio de nuestra jurisdicción cuando fuere necesario hacer efectiva su jurisdicción en un asunto pendiente ante su consideración". En igual término está redactado el segundo párrafo del mencionado inciso. Asimismo, la referida orden de entredicho provisional tiene el propósito de evitar alguna consecuencia adversa que afecte nuestra jurisdicción. 4 Ap XXI-A R. 28.

Una vez este Tribunal emite una orden paralizando los procedimientos en el tribunal inferior, dicho foro carecerá de jurisdicción para actuar en cualquier asunto planteado ante éste. Debido a ello, toda actuación posterior de dicho tribunal será nula. Por lo tanto, la resolución emitida por el Tribunal de Circuito de Apelaciones el 18 de agosto de 2000 es nula.

Aclarado lo anterior, debemos decidir, en primer lugar,  si el Tribunal de Circuito de Apelaciones tenía  jurisdicción para intervenir y/o acoger el recurso de revisión que ante dicho foro judicial radicara la aquí recurrida M&R Developers, S.E., y, en consecuencia, para emitir la resolución que ordena a Salud y al Banco paralizar todo proceso de privatización de la Clínica.


II

Salud alega que el Tribunal de Circuito de Apelaciones carecía de jurisdicción por no haberse perfeccionado el recurso en tiempo. En específico, arguye que, al no incluirse en el apéndice la propuesta presentada por M&R ante el Comité de Privatización, el foro intermedio apelativo venía llamado a desestimar el recurso.

El Artículo 4.002(g) de la Ley de la Judicatura, Ley Núm. 1 de 28 de julio de 1995, confiere autoridad al Tribunal de Circuito de Apelaciones para conocer "[m]ediante auto de revisión, a ser expedido discrecionalmente, de las decisiones, reglamentos, órdenes y resoluciones de cualquier agencia administrativa, de acuerdo con los términos y condiciones establecidos por las secs. 2101 et seq. del Titulo 3, conocidas [sic] como la "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". 4 L.P.R.A. sec. 22k.

En particular, la Sección 2172 de la Ley Núm. 170, ante, establece un término de treinta (30) días para presentar un recurso de revisión ante el Tribunal de Circuito de Apelaciones "contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración". 3 L.P.R.A. Sec. 2172.

A esos fines, el Reglamento del Tribunal de Circuito de Apelaciones establece unos requisitos para los recursos de revisión presentados ante éste. Así, la Regla 59 (E) dispone sobre el contenido del apéndice de los recursos de revisión presentados bajo la L.P.A.U.

En específico dispone que el apéndice deberá contener una copia literal de "la solicitud original, la querella o la apelación, las contestaciones a las anteriores hechas por las demás partes." 4 L.P.R.A. Ap. XXII-A, R.59(E).

Como bien señala Salud, un estudio minucioso del expediente del foro apelativo revela que M&R no incluyó en el apéndice copia de la propuesta para la adquisición de la Clínica, hecho que reconoce M&R. Surge del Reglamento del Tribunal de Circuito de Apelaciones que dicho documento es requerido, expresamente, por la Regla 59(e) para el perfeccionamiento de los recursos de revisión.

Reiteradamente, este Tribunal ha expresado que las normas sobre perfeccionamiento de los recursos apelativos deben observarse rigurosamente. Arriaga Rivera v. F.S.E., res. el 18 de marzo de 1998, 98 TSPR 27; Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642(1987); In re: Reglamento del Tribunal Supremo, 116 D.P.R. 671 (1987); Mfrs. H. Leasing v. Carib Tubular Corp., 115 D.P.R. 122 (1975). Dicha norma se extiende a los requisitos establecidos en el Reglamento del Tribunal de Circuito de Apelaciones. Específicamente, este Tribunal ha señalado que "...no puede quedar al arbitrio de los abogados decidir qué disposiciones reglamentarias deben acatarse y cuándo". Arriaga Rivera v. F.S.E., ante, pág. 688, citando a Matos v. Metropolitan Marble Corp., 104 D.P.R. 122 (1975). Lugo v. Axtmayer, res. el 21 de marzo de 2000, 2000 TSPR 46.

En el caso ante nos, el recurso de revisión presentado por M&R no fue perfeccionado dentro del término establecido en ley. Además, la propuesta presentada por M&R era un documento crucial para resolver la cuestión central a dilucidarse en el foro apelativo. Ello así ya que en el recurso de revisión presentado ante el Tribunal de Circuito de Apelaciones, M&R alegó que a pesar de que su propuesta cumplía con los requisitos establecidos en la Ley de Privatización, y que beneficiaba y estaba a tenor con el interés del publico, la misma fue rechazada, de forma arbitraria, ilegal e irrazonable.

Ciertamente, la propuesta presentada por M&R era un documento necesario y pertinente para la correcta solución del caso. Además, no fue hasta luego de presentado el recurso de certiorari ante este Tribunal, que M&R intentó justificar la omisión de dicho documento en el apéndice. Al respecto señaló que solicitaron copia certificada de la misma al Comité de Privatización, siendo dichos intentos infructuosos. Sin embargo, una lectura del Reglamento del Tribunal de Circuito de Apelaciones revela que el apéndice requiere copia literal de los documentos, no así copias certificadas, por lo que, las justificaciones de M&R no sólo fueron tardías sino que además no justifican su omisión.

En atención a todo lo antes expuesto, somos del criterio que erró el Tribunal de Circuito de Apelaciones al no desestimar el recurso, esto es, al asumir jurisdicción sobre el recurso, resultando inoperante cualquier actuación en el mismo de parte de dicho foro judicial.

### III

La anterior conclusión, de ordinario, pondría fin a nuestra intervención. Sin embargo, dadas las circunstancias especiales en que se "resuelve" el presente recurso por el Tribunal --en que se confirma, por empate, la sentencia emitida por el Tribunal de Circuito de Apelaciones-- aprovechamos la oportunidad para expresar nuestro criterio sobre el proceso de revisión judicial del procedimiento de privatización de las instalaciones de salud; tema que, a nuestro juicio, es de suma importancia.

En Puerto Rico el procedimiento para la privatización de las instalaciones de salud dimana de la Ley 190 del 5 de septiembre de 1996, conocida como "Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamental" (Ley de Privatización).[4] Dicha Ley faculta al Secretario, en unión con el Banco, a arrendar, subarrendar, vender, ceder, permutar o contratar mediante cualquier otro modelo de contratación, las instalaciones de salud. 24 L.P.R.A. sec. 3303.

Por su parte, la Sec. 3306 de la Ley 190, 24 L.P.R.A. sec. 3306, regula el proceso de convocatoria para someter las propuestas. Así, el Secretario y el Banco, cuando determinen disponer de una instalación de salud, deben notificar su intención al público y a las personas o entidades interesadas mediante la publicación "en dos (2) periódicos de circulación general en Puerto Rico". Además, la Ley de Privatización autoriza al Secretario, en unión con el Banco, a establecer el procedimiento que ha de regir el proceso de solicitud, evaluación y selección de propuestas. 24 L.P.R.A. sec. 3306.

Las entidades interesadas en contratar con el Banco y Salud para la adquisición de una instalación de salud, deben "mostrar evidencia fehaciente de una sólida solvencia económica y capacidad administrativa para garantizar la operación eficiente y eficaz de las instalaciones de salud; y demostrar conocimiento del concepto de la reforma de salud..." 24 L.P.R.A. sec. 3305. Sin embargo, el Secretario y el Banco pueden "eximir a la entidad que así lo solicite, de utilizar las instalaciones de salud ... para ofrecer servicios ... de cuidado de salud ... de forma que el contratista pueda darle cualquier otro uso a dicha instalación y cuando dicho uso redunde en beneficios para la comunidad que sirve". Id.

---

[4] La Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamental, 24 L.P.R.A. sec. 3301 *et seq*, según fue aprobada originalmente, concedía discreción únicamente al Secretario de Salud para arrendar, subarrendar, vender, ceder, o contratar a intereses privados las instalaciones de salud. Sin embargo, para determinar el precio mínimo de venta u otra transferencia permanente de instalaciones de salud gubernamental a una entidad o intereses privados, la Ley 190, ante, requería una tasación del Secretario de Hacienda o del Departamento de Salud. Art. 21 de la Ley 190, ante. En el 1997, se aprobó la Ley Núm. 31 del 7 de julio, con el propósito de enmendar ciertas disposiciones de la Ley 190, ante. En específico, se eliminó el requisito de tasación para determinar el precio de venta, y se determinó que el Banco Gubernamental de

Fomento para Puerto Rico sería el agente fiscal del gobierno, asistiendo al Departamento de Salud a establecer los precios de compraventa de las instalaciones de salud pública a intereses privados. Exp. de Motivos de la Ley Núm. 31 del 6 de julio de 1997.

Además, la Ley establece unos requisitos adicionales para que las propuestas sean consideradas.[5]

_____

[5] Las propuestas que radiquen las entidades interesadas deberán contener, además de aquellos otros requisitos establecidos por el Secretario en unión con el Banco, lo siguiente:

(a) El compromiso de adquirir las fianzas y pólizas establecidas por ley así como el aceptar en todo momento la cubierta de seguro médico que provea el asegurador o proveedor de servicios de salud al cual la Administración de Seguros de Salud de Puerto Rico le haya otorgado un contrato para la adquisición de dicha cubierta.

(b) La organización de las instalaciones de salud y servicios que contempla establecer, y definir su relación con la comunidad y cómo armonizará los servicios de un sistema de cuidado de salud dirigido bajo el concepto de la reforma de salud.

(c) La organización estructural y funcional de los servicios de salud y el manejo de pacientes según el nivel de servicios de salud en que esté enmarcada cada instalación en particular.

(d) Una proyección de la utilización de los servicios médico-hospitalarios que generará la población que recibirá los servicios.

(e) El plan de trabajo dividido en fases para implantar el proyecto. El plan incluirá un cronograma.

(f) El presupuesto para cubrir las necesidades de salud de los pacientes de la comunidad que atenderán las instalaciones de salud, y las obligaciones financieras de la entidad proponente.

(g) El diseño de un sistema de información e identificación de pacientes que genere datos válidos, confiables, precisos y a tiempo para la toma de decisiones, producción de informes estadísticos, informes clínicos, facturación y cobro a planes de salud, medicare, pago directo y otros.

(h) La composición de una facultad médica y dental abierta, así como el reglamento que la regula, e indicar los procedimientos para seleccionar a sus miembros y evaluar la calidad del cuidado médico brindado en las instalaciones de salud. También se incluirá el programa de educación continua de la facultad.

(i) Una declaración jurada que contenga la siguiente información:

(1) Si se trata de una corporación, nombre y dirección de sus accionistas, directores y oficiales; se indicará, además, la fecha de registro en el Departamento de Estado y su número de incorporación.

(2) Si se trata de una sociedad, nombre y dirección de sus socios y sus respectivas ocupaciones o profesiones. Si la sociedad tuviere socios que sean corporaciones, nombre y dirección de sus respectivos accionistas, directores y oficiales.

Por otro lado, la Ley dispone que el Secretario y el Banco podrán, "[a] su discreción, rechazar alguna o todas las propuestas u otorgar contratos para todo o parte de las instalaciones de salud en un área o región en particular". 24 L.P.R.A. sec. 3309. Sin embargo, la determinación del Banco y el Secretario, según dispone la Ley de Privatización, debe estar precedida y basada en "una evaluación de la población a ser servida, sus necesidades de salud, y las instalaciones y servicios de salud existentes en el área o región en cuestión, todo ello enmarcado en la filosofía y política pública contenidas en la reforma de salud". 24 L.P.R.A. sec. 3304. Es por ello, que la propia Ley dispone que "[n]i el Secretario ni el Banco podrán otorgar ningún convenio o contrato de privatización que contravenga la política pública o que resulte contrario a las disposiciones de [dicha ley]". 24 L.P.R.A. sec. 3320.

Una vez se otorga un contrato con alguna entidad, la Ley requiere que mantenga ciertas pólizas y fianzas. 24 L.P.R.A. sec. 3310. En el caso en que se otorgue un contrato de arrendamiento de una facilidad de salud, el término inicial de dicho contrato no podrá exceder de diez (10) años, sujeto, su renovación, al cumplimiento de la Ley de Privatización y a aquellas relacionadas; además, dicha facilidad no podrá ser subarrendada o cedida sin el consentimiento escrito previo del Banco y el Secretario. 24 L.P.R.A. secs. 3314-3315.

Finalmente, la Sección 27 de la Ley Núm. 31 del 6 julio de 1997, dispone que: "[e]l proceso de privatización de las instalaciones de salud gubernamentales estará exento de las disposiciones de la Ley Núm. 170 de 12 agosto de 1988, según enmendada [secs. 2102 et seq. del Título 31, conocida como 'Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico'."

IV

El Banco alega que, al no ser aplicable la L.P.A.U. al proceso de privatización, el Tribunal de Circuito de Apelaciones no tiene facultad para revisar las determinaciones del Comité de Privatización, y que por lo tanto, no tiene jurisdicción para paralizar los procedimientos de privatización de la Clínica.

---

(3) Si se trata de un individuo o persona natural, expresará su nombre, dirección y profesión.

(4) Afirmar o negar que algunos de los interesados, accionistas, directores, oficiales o socios de la entidad es o no parte interesada, accionista, director, oficial o socio de otra entidad en la industria de salud y, en caso afirmativo, revelar el nombre de dicha entidad y la dirección de su oficina principal.

(5) Afirmar o negar que alguna persona jurídica que sea accionista, afiliada o subsidiara de ésta, o alguna persona natural que sea accionista, director u oficial de ésta, estará haciendo negocios con algunas o todas las instalaciones de salud incluidas en su propuesta. 24 L.P.R.A. sec. 3307.

No hay duda de que "[e]n la práctica casi todo es revisable por los tribunales [y c]omo resultado de esa postura se ha establecido una presunción que favorece la revisión judicial". [Escolio omitido]. Demetrio Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, Ed. Forum (1993), a las págs. 414-415. De hecho, "[s]e presume el acceso a los tribunales, siempre que no se haya prohibido por la Asamblea Legislativa en forma expresa y clara". Id. Así lo hemos reconocido tradicionalmente. Véase, <u>Bonilla</u> v. <u>Chardón</u>, 118 D.P.R. 599 (1987); <u>Santos Rodríguez</u> v. <u>Fuentes Fluviales</u>, 91 D.P.R. 56, 65 (1964); <u>Medina</u> v. <u>Pons</u>, 81 D.P.R. 1 (1959); <u>López Luiggi</u> v. <u>Muñoz Marín</u>, 80 D.P.R. 4 (1957); <u>Rivera</u> v. <u>Benítez, Rector</u>, 73 D.P.R. 377 (1952).

En <u>Rivera Colón</u> v. <u>Director Administrativo de los Tribunales</u>, res. el 9 de febrero de 1998, caso similar al de autos, resolvimos que: "el mero hecho de que ni la Asamblea Legislativa, al exceptuar expresamente la Rama Judicial de la aplicación de la L.P.A.U., ni este Tribunal, al no promulgar un reglamento a esos efectos, hayan dispuesto un procedimiento de revisión judicial para casos como el que tenemos ante nuestra consideración en el día de hoy, <u>no</u> significa ... que las partes estén desprovistas de tal remedio".

Ahora bien, aun cuando exista una prohibición estatutaria de revisión judicial, es necesario analizar si la misma afecta derechos constitucionales o estatutarios de las partes. De ser así, el acceso a los tribunales está disponible. Fernández Quiñones, ante, pág. 415. Sin embargo, en el caso ante nuestra consideración, no hay que realizar el referido análisis ya que la Ley de Privatización <u>no establece una prohibición expresa a la revisión judicial de las determinaciones del Departamento de Salud y el Banco</u>.

Por consiguiente, nos toca precisar entonces cual es el procedimiento de revisión judicial aplicable a las determinaciones de Salud y el Banco en cuanto a la privatización de la Clínica.

V

Al interpretar la voluntad del legislador, debemos presumir la sensatez y razonabilidad de dichos actos legislativos. Una interpretación de ley que conduzca a una conclusión absurda, debe ser rechazada. Elfrén Bernier & José Cuevas Segarra, <u>Aprobación e Interpretación de las Leyes en Puerto Rico</u> 242 (1987). Por ello, al ejercer nuestra función de interpretar las leyes "tenemos la obligación de armonizar hasta donde sea posible todas las disposiciones de ley envueltas para lograr el resultado más sensato, lógico y razonable". <u>Andino</u> v. <u>Fajardo Sugar Co</u>., 82 D.P.R. 85, 94 (1961). Hemos expresado, además, que "la ley nunca debe interpretarse tomando una frase aislada, sino tomando en consideración integralmente todo su contexto". <u>Marina Ind.. Inc.</u> v. <u>Brown Boveri Corp.</u>, 114 D.P.R. 64, 90 (1983). "[A]l interpretar la ley hay que leerla y considerarla en su totalidad, no fraccionalmente y para encontrarle su significado, el tribunal tiene que tener en cuenta el propósito de la misma". <u>Delgado</u> v. <u>D.S.C.A.</u>, 114 D.P.R. 177 (1983); <u>Cirino</u> v. <u>Fuentes Fluviales</u>, 91 D.P.R. 608, 616 (1964).

Como es sabido, la Legislatura de Puerto Rico aprobó la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2101 *et seq.*, (L.P.A.U.). La misma se creó con el propósito de uniformar todo el procedimiento administrativo ante las agencias gubernamentales. El estatuto sólo exceptuó de sus disposiciones a la Rama Judicial, a la Oficina Propia del Gobernador, a la Guardia Nacional de Puerto Rico, a los Gobiernos Municipales y sus entidades o corporaciones, a la Comisión Estatal de Elecciones, al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos y a la Comisión para la Celebración del Quinto Centenario del Descubrimiento de América y de Puerto Rico. 3 L.P.R.A. sec. 1338.

La intención del legislador, al aprobar la L.P.A.U. fue, en parte, establecer "un procedimiento uniforme de revisión judicial a la acción tomada por la agencia al adoptar un reglamento o al adjudicar un caso". Ley de Procedimiento Administrativo Uniforme, Exposición de Motivos; Hernández O'Farril v. Golden Tower Development Corp., 125 D.P.R. 744 (1990). Dicho procedimiento uniforme de revisión judicial aplica a "aquellas órdenes, resoluciones y providencias dictadas por agencias o funcionarios administrativos que deban o puedan ser revisadas por el Tribunal de Circuito de Apelaciones mediante recurso de revisión".[6] Más adelante, la propia ley, específicamente exceptúa del procedimiento uniforme de revisión judicial las órdenes, resolución y providencias "dictadas por el Secretario de Hacienda con relación a las leyes de rentas internas del Estado Libre Asociado de Puerto Rico ... y las dictadas por el Centro de Recaudación de Ingresos Municipales con relación a las deficiencias, tasaciones e imposiciones contributivas de la Ley sobre la Contribución sobre la Propiedad Mueble e Inmueble...". Esto significa que, como norma general, a las órdenes, resoluciones y providencias dictadas por el Departamento de Salud y el Banco de Fomento que puedan y deban ser revisadas, le son de aplicación las disposiciones de revisión judicial contenidas en la L.P.A.U.

Por otro lado, la Ley de Privatización establece un procedimiento sui generis para la evaluación y selección de propuestas para disponer de las instalaciones de salud. Esto es, crea un procedimiento especial para la privatización de las instalaciones de salud. Por tal razón, no tienen que cumplir con la rigidez del Capítulo III de la Ley de Procedimiento Administrativo Uniforme, ante, relativo a los procedimientos adjudicativos. Es por ello que la propia ley dispone que la L.P.A.U. no aplica a dicho procedimiento. En este sentido, la Ley de Privatización dispone que: "[e]l proceso de privatización de las instalaciones de salud gubernamentales estará exento de las disposiciones de la Ley Núm. 170 de 12 agosto de 1988, según enmendada [secs. 2102 *et seq.* del Título 31, conocida como

---

[6] La L.P.A.U. define orden o resolución como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas especificas, o que impongan penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador". 3 L.P.R.A. sec. 2102(f).

'Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico'." Sin embargo, nada dispone en cuanto al procedimiento de revisión judicial del procedimiento de privatización, es decir, ni lo excluye ni lo regula.

Hemos visto que la L.P.A.U. no exceptúa expresamente el procedimiento de privatización de sus disposiciones de revisión judicial. Somos del criterio, en consecuencia, que las disposiciones de la L.P.A.U., relativas a la revisión judicial, son aplicables a las determinaciones del Banco y Salud relacionados con la privatización de las instalaciones de salud.

Esto es, la Ley de Privatización se limita a regular el proceso para seleccionar la propuesta adecuada, la celebración del contrato y la ejecución del mismo. Ciertamente, por la particularidad del proceso, no son aplicables las disposiciones para los procesos de adjudicación contenidos en la L.P.A.U., y así lo dispone la propia Ley de Privatización.

Sin embargo, en cuanto a las disposiciones de revisión judicial contenidas en la L.P.A.U., como nada dispone al respecto la Ley de Privatización, entendemos que sí son aplicables a las determinaciones hechas por las agencias pertinentes en cuanto a la privatización de las instalaciones de salud.

En conclusión, a nuestro juicio, la determinación de rechazar la propuesta de M&R es revisable bajo las disposiciones de la L.P.A.U., que se limitan a regular el procedimiento de revisión judicial.


                                        FRANCISCO REBOLLO LOPEZ
                                             Juez Asociado