MARIO PÉREZ SANTOS, peticionario, *v.* COMISIÓN DE RELACIONES DEL TRABAJO DEL SERVICIO PÚBLICO, recurrida.

*Número:* CC-2002-578 *Resuelto:* 4 de octubre de 2002

182

*Rafael A. Nadal Arcelay* y *María del Pilar Fas Santiago*, abogados de la parte peticionaria.

PER CURIAM

(Regla 50)

El 5 de julio de 2002 la parte peticionaria, el Sr. Mario Pérez Santos, mediante presentación de un auto de *certiorari*, nos solicita que revisemos la sentencia dictada por el Tribunal de Circuito de Apelaciones de 30 de abril de 2002. Mediante ésta, dicho foro se declaró sin jurisdicción para considerar una resolución de la Comisión de Relaciones del Trabajo del Servicio Público.

Una vez examinado el recurso ante nos, así como su apéndice, expedimos el auto y procedemos a resolver sin trámite ulterior con la autoridad que nos confiere la Regla 50 del Reglamento de este Tribunal.

I

El 12 de noviembre de 1999, el Prof. Mario Pérez Santos solicitó por escrito al Secretario de Educación su interés de no estar afiliado a la Federación de Maestros, organización debidamente certificada como representante exclusivo en el Departamento de Educación (en adelante Departamento). El peticionario pertenece a la Unidad Apropiada de Maestros, que bajo la Ley Núm. 45 de 25 de febrero de 1998, según enmendada, 3 L.P.R.A. sec. 1451 *et seq.*, cubre el Convenio Colectivo otorgado entre la Federación de Maestros y el Departamento.

El 29 de enero de 2002 el Departamento, mediante co-

municación escrita, destituyó al peticionario de empleo y sueldo de su puesto como maestro de Educación Comercial de la Escuela Gabriela Mistral del Distrito Escolar de San Juan III, y le canceló todos los certificados docentes poseídos para ejercer como maestro o en cualquier otra función docente en el Sistema de Educación Pública y en las escuelas privadas de Puerto Rico. En esa comunicación, el Departamento apercibió al maestro que tenía un término de treinta días, contados a partir del recibo de ésta, para solicitar una vista con el fin de ventilar los cargos en su contra ante un árbitro de la Comisión de Relaciones del Trabajo del Servicio Público (en adelante Comisión).

El 13 de febrero de 2002, el peticionario, por conducto de su representación legal, solicitó mediante carta certificada con acuse de recibo un señalamiento para la vista junto al formulario de Solicitud de Arbitraje de Quejas y Agravios de la Comisión.

El 8 de marzo de 2002, la Comisión desestimó tal solicitud al aducir que por disposición expresa de la Sec. 701 del Reglamento de la Comisión, la solicitud se puede iniciar únicamente por acuerdo de las partes en un convenio colectivo o una de las partes en tal convenio.

Inconforme, el peticionario acudió al Tribunal de Circuito de Apelaciones. Ese tribunal, mediante la resolución objeto de este recurso, concluyó que no tiene jurisdicción para revisar una orden o resolución final de la Comisión o de un laudo mediante el cual se adjudique un *impasse* en una negociación, y que tal autoridad corresponde al Tribunal de Primera Instancia.

Finamente, el peticionario acude ante nos al señalar que:

*ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL NEGARSE A EXPEDIR EL AUTO DE REVISIÓN Y AL DECLARARSE SIN JURISDICCIÓN PARA REVISAR LA RESOLUCIÓN DE LA COMISIÓN DE RELACIONES DEL TRABAJO DEL SERVICIO P[Ú]BLICO LA CUAL VIO-*

*LENTA EL DEBIDO PROCESO DE LEY DEL APELANTE*
*AL NEGARLE ACCESO A LA COMISIÓN.*

## II

■ La Exposición de Motivos de la Ley Núm. 45, *supra*, Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, según enmendada, claramente señala que su aprobación obedeció al objetivo de "conferirle a los empleados públicos en las agencias tradicionales del gobierno central, a quienes no aplica la Ley de Relaciones del Trabajo de Puerto Rico, el derecho a organizarse para negociar sus condiciones de trabajo dentro de los parámetros que se establecen en esta Ley". 1998 Leyes de Puerto Rico 143, 148.

■ La Ley Núm. 96 de 7 de agosto de 2001, que enmendó la Ley Núm. 45, *supra*,[1] añadió a esta última un Art. 17, Sec. 17.1, que expresa:

Aquellos empleados que formen parte de una unidad apropiada para fines de negociación colectiva debidamente certificada por la Comisión, que opten por no afiliarse ni ser representados por la organización obrera debidamente certificada, podrán solicitar ser excluidos de la misma mediante presentación de una notificación al efecto al jefe de la Agencia, con copia al representante exclusivo, dentro de los treinta (30) días siguientes a la notificación de la certificación del representante exclusivo. 2001 (Parte 1) Leyes de Puerto Rico 403, 416.

---

[1] El anterior Art. 4, Sec. 4.2 de la Ley Núm. 45 de 25 de febrero de 1998 (4 L.P.R.A. ant. sec. 1451c), disponía:

"Aquellos empleados que formen parte de una unidad apropiada para fines de negociación colectiva debidamente certificada por la Comisión, que no interesen afiliarse ni ser representados por la organización obrera debidamente certificada, podrán solicitar ser excluidos de la misma. Este derecho no aplicará una vez sean miembros de la organización obrera. Estos empleados no pagarán cargos por servicios a la organización obrera. Los empleados no afiliados a la organización obrera observarán las disposiciones del convenio colectivo en cuanto a los procedimientos para ventilar quejas, agravios y arbitraje; y les serán aplicables para su beneficio las disposiciones del convenio colectivo en lo que respecta a salarios, beneficios marginales y términos y condiciones de empleo. El taller cerrado y el taller unionado estarán prohibidos."

Sin embargo, los miembros de la Unidad Apropiada que opten por no afiliarse, están sujetos a las disposiciones del convenio colectivo en cuanto a los procedimientos de quejas, agravios y arbitraje. Art. 17, Sec. 17.2 de la Ley Núm. 96, *supra*.([2])

■ El Convenio Colectivo adoptado por la Federación de Maestros y el Departamento el 3 de febrero de 2000 establece:

> Todas las controversias, disputas, quejas, querellas y reclamaciones basadas en la aplicación e interpretación de las disposiciones de este convenio serán de competencia de los organismos y funcionarios creados y designados en este Artículo y de los organismos creados por la Ley número 45 de 25 de febrero de 1998, Título 3 LPRA Sec. 1451 y siguientes, conocida como Ley de Relaciones del Trabajo para el Servicio Público. Sec. 10.01 del Convenio Colectivo.

La Sec. 10.10 expresa, en lo pertinente a este caso, lo siguiente:

> Todo empleado, *personalmente* o a través del Sindicato, tendrá treinta (30) días a partir del recibo de la notificación de la formulación de cargos, para solicitar la celebración de una vista para la ventilación de los mismos ante un Árbitro de la Comisión de Relaciones del Trabajo del Servicio Público creada por la Ley núm. 45, supra. (Énfasis suplido.)

■ Este fue el curso procesal seguido por el peticionario; sin embargo, la Comisión se negó a procesar la solicitud de arbitraje en virtud del Art. 701 del Reglamento de la Comisión, que en lo pertinente dispone:

---

([2]) "(a) Toda controversia surgida al amparo de un convenio colectivo negociado entre las partes, será dirimida a través de los mecanismos pactados en el convenio colectivo para el ajuste de quejas y agravios.

"(b) Todo convenio entre el representante exclusivo y la agencia deberá incluir procedimientos para resoluciones de quejas y agravios, incluyendo el arbitraje, que pueda surgir durante la vigencia de un convenio, incluyendo controversias sobre la aplicación e interpretación de sus cláusulas.

"(c) Las partes vendrán obligadas a acogerse al servicio de arbitraje provisto por la Comisión de Relaciones del Trabajo en el sector público." Art. 8 de la Ley Núm. 45, *supra*, 3 L.P.R.A. sec. 1452.

A. Las solicitudes de arbitraje de quejas y agravios se podrán iniciar únicamente de las dos siguientes formas:
1. por acuerdo de ambas partes a un convenio colectivo;
2. o a solicitud de una de las partes que suscribió un convenio colectivo.

La Ley Núm. 45, *supra*, creó la Comisión, a la cual le otorgó poderes cuasi legislativos y cuasi judiciales con el único fin de implementar sus propósitos. Un reglamento promulgado por un ente administrativo no puede estar en conflicto con la ley habilitadora. *Franco v. Depto. de Educación*, 148 D.P.R. 703 (1999).

> La función de los tribunales generalmente ha de ir dirigida a evaluar: (1) si la actuación administrativa está autorizada por la ley; (2) si se delegó poder de reglamentación; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales, y (5) si la reglamentación es arbitraria o caprichosa. *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319, 326 (1987).

Los tribunales no deben perder de perspectiva que "un reglamento promulgado para implantar la ejecución de una ley puede complementarla, pero no estar en conflicto con ésta ...". *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980). De lo contrario, la disposición reglamentaria tiene que ceder ante el mandato legislativo. *Díaz v. Srio. de Hacienda*, 114 D.P.R. 865, 874 (1983). Véanse: *A.P.I.A.U., Inc. v. Srio. de Hacienda*, 100 D.P.R. 173, 179 (1971); *Rosario Mercado v. San Juan Racing Assn., Inc.*, 94 D.P.R. 634, 642 (1967). "La preocupación evidenciada por esta norma va encaminada a examinar la cuestión sustantiva de si la regla está de acuerdo con las disposiciones estatutarias bajo las cuales se promulgó." *Carrero v. Depto. de Educación*, 141 D.P.R. 830, 837 (1996).

Los reglamentos promulgados por una agencia, para que sean válidos, además de encontrarse en los límites legales, no pueden adolecer de otro vicio como contener

reglas caprichosas y arbitrarias. *Carrero v. Depto. de Educación*, supra, págs. 837–838. Las agencias no tienen facultad para adoptar reglamentación que imponga requisitos adicionales a aquellos establecidos por los estatutos que rigen la revisión de la agencia. *Carabarín et al. v. A.R.P.E.*, 132 D.P.R. 938 (1993); *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992).

> Así, pues, las agencias administrativas no pueden promulgar reglas caprichosas y arbitrarias. Las reglas deben ser razonables. Los tribunales deben determinar si existe una relación o conexión racional entre una regla o reglamento y el estatuto que autoriza su creación. El ataque contra la reglamentación será exitoso si se demuestra que las normas son arbitrarias por descansar en motivos desvinculados del propósito de la reglamentación. *Franco v. Depto. de Educación*, supra, pág. 712.

■ Además, reiteradamente hemos afirmado que las reglas procesales no tienen vida propia, sino que existen para hacer viable la consecución del derecho sustantivo de las partes. *Mun. de Arecibo v. Almac. Yakima*, 154 D.P.R. 217 (2001); *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986).[3]

■ El Art. 701 del Reglamento Núm. 6385 se encuentra en franca contradicción con la ley que permitió su promulgación al impedir que un empleado no afiliado acceda a los mecanismos de quejas, querellas y arbitraje que tanto la Ley Núm. 45, *supra*, y el Convenio Colectivo promueven.

La actuación de la Comisión, al ampararse en una norma procesal, arbitraria y caprichosa, para denegar el acceso al procedimiento de arbitraje que está obligada a brindar, tiene el indeseado efecto de restringir su uso sólo a

---

[3] "En ocasiones, en nuestro afán de hacer valer las reglas, las aplicamos literalmente y perdemos de vista que las normas procesales no tienen vida propia. Estas sólo existen para hacer viable la determinación de los derechos sustantivos de las partes y la resolución de forma pacífica de las controversias." *M & R Dev., S.E. v. Bco. Gub. Fom.*, 153 D.P.R. 596, 599-600 (2001), opinión de conformidad del Juez Asociado Señor Fuster Berlingeri.

aquellos empleados afiliados y representados por la Federación de Maestros, penalizando a aquellos que ejercieron su derecho consagrado en la Ley Núm. 45, *supra.*

Como ya mencionamos, la Ley Núm. 45, *supra*, explícitamente señala que el procedimiento para la resolución de querellas establecido en el Convenio Colectivo incluye a todos los miembros de la Unidad Apropiada, aun a aquellos que opten por su derecho de no afiliarse. Por ello, entendemos que la Comisión es el foro con jurisdicción para ventilar la formulación de cargos contra el peticionario.

 También actúo erróneamente el Tribunal de Circuito de Apelaciones al declararse sin jurisdicción para revisar la resolución final de la Comisión, cuando el Art. 10, Sec. 10.1 de la Ley Núm. 45, *supra*, específicamente y en lo pertinente, expresa:([4])

> El *Tribunal de Circuito de Apelaciones*, a solicitud de parte, *tendrá jurisdicción para entender discrecionalmente en los recursos de revisión de órdenes y resoluciones finales de la Comisión* según los términos que dispone las secs. 2101 et seq. de este título, conocidas como "Ley de Procedimiento Administrativo Uniforme". Los recursos de revisión serán competencia de los Paneles de la Región Judicial de San Juan. (Énfasis suplido.) 3 L.P.R.A. sec. 1452d.

La competencia del Tribunal de Primera Instancia en cuanto a la Ley Núm. 45, *supra*, está definida en ella y se refiere, en síntesis, a poner en vigor las órdenes y resoluciones finales de la Comisión. 3 L.P.R.A. sec. 1452e.

Por los fundamentos vertidos en esta opinión, *se dictará una sentencia que revoca la resolución del Tribunal Circuito de Apelaciones por éste estar dotado plenamente de autoridad jurisdiccional para revisar las decisiones finales de la Comisión. Además, en virtud del principio de economía procesal, se revocará la resolución de la Comisión a los efectos de reconocerle al peticionario el derecho al procedi-*

---

([4]) Además, véase el Art. 9, Sec. 9.3(j) de la Ley Núm. 45, *supra*, 3 L.P.R.A. sec. 1452c.

*miento de arbitraje establecido en el Convenio Colectivo. Se devolverá este asunto a la Comisión para que proceda de conformidad con lo aquí resuelto respecto a la solicitud de arbitraje del señor Pérez Santos a celebrar la vista correspondiente para dilucidar los cargos en su contra.*